USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 96-1285 CARLOS J. NIEVES-VILLANUEVA, et al., Plaintiffs, Appellants, v. JOSE R. SOTO-RIVERA, Individually and as  Mayor of the Municipality of Canovanas, et al., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Cyr, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Carlos A. del Valle Cruz for appellants. ________________________ Miguel Pagan, with whom Pagan & Pagan was on brief, for _____________ ______________ appellees. ____________________ December 22, 1997 ____________________ LYNCH, Circuit Judge. Plaintiffs are fifty-one LYNCH, Circuit Judge. _____________ former "transitory" or non-permanent employees of the municipality of Canovanas, Puerto Rico. A jury found against their claims that the incoming New Progressive Party (NPP) administration failed to renew their contracts of employment in various municipal jobs because they were supporters of the prior Popular Democratic Party (PDP) administration and so violated their rights under the First Amendment.1 The important question raised by this case is whether the district court committed error in admitting the testimony of an expert witness. The witness testified as to what the law required and that her examination of plaintiffs' personnel records led to the conclusion that plaintiffs had been improperly hired or renewed in the first place. Defendants did not testify this was their reason at the time of their decision not to renew plaintiffs' contracts. Although such expert testimony should not have been permitted, we consider any alleged error in light of the  ____________________ 1. This court has reviewed numerous claims of political firings or demotions from Puerto Rico. In November of 1984, the PDP won the gubernatorial election in Puerto Rico. Before that, the governor's office was held by a member of the NPP. A first wave of cases involved outright dismissals; the second wave involved adverse actions less than outright dismissals. That history is recited in Agosto-de-Feliciano ___________________ v. Aponte-Roque, 889 F.2d 1209 (1st Cir. 1989). In 1992, ____________ control of the governor's office and of some local governments switched, and the NPP came back to power. Now, this court is faced with another wave of litigation (we hesitate to count which wave this is), brought this time by PDP members. -2- 2 evidence as a whole, and particularly in light of the judge's instructions to the jury. In the circumstances of this case, we consider the alleged errors harmless and affirm the jury verdicts. I. I Plaintiffs sued, inter alios,2 Jose Soto-Rivera ("Soto") and the Municipality of Canovanas under 42 U.S.C.  1983, alleging that they had been dismissed due to their political beliefs and in violation of their due process rights. The complaint sought reinstatement, injunctive relief, compensatory and punitive damages, and attorney's fees. On defendants' motion for summary judgment, the district court dismissed plaintiffs' due process claims, noting that, under First Circuit precedent and Puerto Rico law, transitory employees generally do not have a property interest in continued employment beyond their yearly terms of appointment. See Caro v. Aponte-Roque, 878 F.2d 1, 4-5 (1st ___ ____ ____________ Cir. 1989); see also Mel ndez v. Municipio de Arroyo, 96 _________ ________ ____________________ J.T.S. Case No. 68, at p. 1077 (P.R. Sup. Ct. May 15, 1996) (reaffirming that, as a matter of Puerto Rico law, transitory employees generally have no "legitimate expectation" to a  ____________________ 2. The district court dismissed plaintiffs' claims against the other municipal defendants prior to trial. -3- 3 renewal of their contracts); Departamento de Recursos ___________________________ Naturales v. Correa, 118 D.P.R. 689, 697 (1987) (same).3 _________ ______ Before trial, defendants retained Blanca Santiago as an expert in governmental personnel matters to examine the plaintiffs' personnel records. Santiago's report concluded that plaintiffs' initial appointments and, in some cases, renewal appointments were contrary to Puerto Rico municipal law, and that the previous administration had employed a "subterfuge" to renew the plaintiffs' appointments and to evade a prohibition on making personnel decisions within two months of a general election. The report also opined that plaintiffs did not have "a legitimate expectation of retaining employment." Finally, the report concluded that, under the law of Puerto Rico, "the Municipality of Canovanas could not continue extending said transitory appointments." Upon receiving Santiago's report, plaintiffs made a motion in limine to exclude Santiago's testimony. Plaintiffs' principal objection was that the expert witness's opinion concerning the propriety of plaintiffs' appointments  ____________________ 3. Defendants also moved for summary judgment on the claims for damages on qualified immunity grounds. The district court denied defendants' motion, holding that before the events in 1993, the First Circuit had clearly established that First Amendment protection extended to political non- renewals of employment. See Caro, 878 F.2d at 2-4; Figueroa ___ ____ ________ v. Aponte-Roque, 864 F.2d 947, 951 (1st Cir. 1989). The ____________ district court determined that there existed a genuine issue of material fact concerning defendants' motives in declining to renew plaintiffs' transitory appointments.  -4- 4 was not relevant to liability. Defendants did not maintain that Soto did not renew plaintiffs' appointments due to irregularities in how they were appointed. The district court denied plaintiffs' motion. II. II We state the facts as the jury could have found them, in the context of the evidence as a whole, with particular emphasis on the evidence allegedly admitted in error. Plaintiffs said they were affiliated with the PDP, one of Puerto Rico's major political parties. In 1992, Soto was elected Mayor of Canovanas as the candidate of the NPP, the main rival of the PDP. Soto was the first NPP candidate elected as Mayor of Canovanas in several decades. Plaintiffs had been appointed by the prior PDP mayor, Esteban Melendez-Rivera, to various municipal jobs as transitory employees. Those jobs included manual labor in the Public Works Department, janitorial work in municipal offices, clerical work, and other lower level jobs with minimal salaries. Under Puerto Rico's Autonomous Municipalities Act, 21 L.P.R.A. 4554, transitory employees may be appointed for a limited term, generally not to exceed one year. Although plaintiffs, unlike other civil servants in Puerto Rico, had no formal tenure in their jobs following the expiration of their contracts, many had been reappointed -5- 5 for several one-year terms as a matter of course. Other plaintiffs were in their first annual term of employment. On January 15, 1993, three days after taking office as Mayor of Canovanas, Soto informed most of the plaintiffs that their positions as transitory employees had expired and that he would not renew their appointments. The remaining plaintiffs' appointments were temporarily extended, but eventually their appointments expired as well. Plaintiffs testified that they campaigned for Esteban Melendez-Rivera, the PDP candidate, in the 1992 mayoral election. Plaintiffs testified that they had engaged in various PDP political activities on behalf of Melendez, including attending political meetings or taking part in the campaign rallies known as caravanas ("caravans") that are _________ typical of mayoral campaigning in Puerto Rico. Many of them testified that Soto solicited their support, and, when they said they would support the incumbent PDP mayor instead, Soto threatened to leave them without employment after the election. Many plaintiffs also testified that they observed, after their non-renewals, NPP members performing the duties of the jobs they had performed as transitory employees. In support of their First Amendment claims, plaintiffs put in evidence their personnel files, arguing that there was nothing in them that would indicate poor performance. Plaintiffs also presented an expert witness in -6- 6 personnel administration to bolster their claims of political discrimination.4 Defendants' position was that Soto had not considered plaintiffs' political affiliation in his decision to allow their contracts to expire. They presented three witnesses: Mayor Soto, Vice-Mayor Miguel Jimenez-Carrion ("Jimenez"), and Blanca Santiago, their expert witness on government personnel administration. Soto categorically denied the plaintiffs' allegations that he had threatened their jobs if they supported the incumbent. He noted that he had retained or hired PDP members to municipal jobs. He testified that he had allowed plaintiffs' contracts to expire because their services were no longer needed. Jimenez gave essentially the same version of events. Neither testified that they had not renewed the contracts because plaintiffs' appointments had been irregular. Defendants' Expert __________________ Defendants' expert witness, Blanca Santiago, testified that the plaintiffs' personnel records demonstrated that, in many cases, their appointments were contrary to Puerto Rico law. In particular, Santiago testified that many employees had been on the payroll in excess of one year,  ____________________ 4. The plaintiffs did not order the transcript of that portion of the trial that included their expert witness's testimony. That omission complicates our analysis, as we explain below. -7- 7 sometimes without any documented reappointment, and opined that this violated the Autonomous Municipalities Act, which provides that the appointment of "[t]ransitory employees shall not exceed one (1) year . . . ." 21 L.P.R.A.  4554(c). Santiago also testified that many of the plaintiffs had been illegally appointed within two months of a general election, in violation of a prophylactic prohibition on government personnel decisions commonly known as the "electoral ban." See 21 L.P.R.A. 4564; 3 L.P.R.A. 1337. ___ Santiago testified further that, in some cases, the personnel records had been manipulated in order to make it appear that plaintiffs' appointments were not within the electoral ban period. Defense counsel then questioned Santiago to elicit testimony to the effect that courts have held that transitory employees do not have a right to the renewal of their contracts. Defense counsel accomplished this objective by reading passages from court decisions holding that transitory employees in Puerto Rico have no reasonable or legitimate expectation of continued renewal of their contracts that would entitle them to administrative due process protections before allowing their contracts to expire, and then asking Santiago to comment. This was done although the due process claims had been dismissed. -8- 8 Santiago testified that, under court decisions, "[o]nce [a transitory employee's] appointment ends the transitory employee . . . doesn't have any . . . other right, regardless of the fact that his appointment has been extended for a period of time that we may call 'excessively long.'" Plaintiffs' counsel objected to this testimony on the ground that it misstated the law. That objection was overruled. Soon afterwards, defense counsel continued questioning Santiago on the legal status of transitory employees: Q. I am going to review . . . the case of Fermin Orta et al. versus Pedro A. _________________________________________ Padilla, Municipality of Trujillio Alto, _________________________________________ et al. . . . . I'm going to read to you ______ from the translation of that opinion . . . . At this point, plaintiffs again objected, noting that the case concerned the due process rights of transitory employees, and that the sole claim on trial was the First Amendment claim. Again, the district court overruled plaintiffs' objection. Defendants resumed questioning the witness about the law articulated in that case.5 Plaintiffs  ____________________ 5. Defense Counsel: "[I]t says, the opinion: After a careful examination of the service and appointment contracts of these 23 appellees, we find that the only contract terminated before the expiration date was that of Juana Cruz. The other 22 employees were notified that the contracts would be terminated at the expiration date of the same. In light of the prevailing principles, we must conclude that the termination of the contract of those 22 transitory employees was valid at law because the municipality did not have to provide them with the regulatory guarantees mentioned above. -9- 9 objected again, noting, "She's testifying [to] what are basically jury instructions." The district court initially sustained plaintiffs' objection, but then permitted defense counsel to continue questioning the witness in this manner. Defense counsel proceeded to read excerpts from the Supreme Court of Puerto Rico's decision in Correa, and from this ______ court's decision in Cheveras-Pacheco v. Rivera-Gonzalez, 809 ________________ _______________ F.2d 125, 129 (1st Cir. 1987) (holding that transitory employees do not have a property interest in continued employment). Plaintiffs' counsel again protested, and a conference was held outside the presence of the jury. Plaintiffs' counsel asked the judge to strike Santiago's testimony or give a curative instruction, stating explicitly that it is against the law for a municipal government to let a transitory employee's contract expire if the primary reason is the employee's political affiliation. The district court refused, saying plaintiffs had opened the door with their own  ____________________ The trial court erred in ruling that the termination was unlawful." Santiago: "The interesting thing about that case is that there were -- there were 22 transitory employees whose appointments were to end, and there was another group of employees in which -- in which case the decision was different, and the matter of discrimination was approved. But in the case of the transitory ones their appointments had ended." -10- 10 expert witness and that they could cross-examine Santiago on the illegality of firing employees for political reasons.6 On cross-examination, Santiago stated that the legal opinions she provided on direct examination concerning the status of transitory employees and the alleged illegalities in plaintiffs' original appointments were based solely on Commonwealth law, not federal law. When questioned about the case law of this court which has held that a decision not to renew a transitory employees' contract may not be primarily based on political affiliation under the First Amendment, the witness was evasive. Although she agreed that transitory employees could not be discharged for political reasons, she insisted that this did not apply when  ____________________ 6. The Court: "Counsel, the problem with you is that you don't make a distinction between the -- the witness' credibility and what is admissible. She -- Mr. Pagan [defense counsel] read to her certain passages of cases saying that -- concerning transitory employees. I'm certain you're going to read her a part saying if you take a transitory employee and discharge him for political reasons it's illegal, and she has to agree with that. See? That's the way you neutralize that. I'm not going to teach you how to practice law." (At oral argument, plaintiff's counsel argued that this last sentence was particularly prejudicial. However, as this admonition did not occur in the presence of the jury, we examine only the impact of the district court's ruling itself.)  The judge continued, "[T]he Orta case was brought [in] ____ by your [expert] witness, and that opened the door for [defense counsel] to bring [in] the Orta case. . . . Once you ____ open the door then you can't complain. . . . I will instruct the jury on the law at the proper time, and they have to follow the law as I tell them, not as what counsel tells them the law is." -11- 11 a contract expired because, she said, such an employee was not discharged. Closing Arguments _________________ In closing arguments, plaintiffs' counsel argued that the witnesses' testimony, principally the plaintiffs', established that the incoming NPP administration's motive for refusing to renew plaintiffs' contracts was reprisal for their support of the previous PDP mayor. Defense counsel strongly contested the plaintiffs' credibility, and argued that Soto never considered plaintiffs' political affiliation in his decision not to renew plaintiffs' contracts. Defense counsel also made reference to Santiago's testimony, arguing that the employees were transitory and that their appointments had been in violation of Puerto Rico municipal law. Defense counsel also argued that the Mayor would have been in violation of that law if he had renewed their appointments. Defense counsel made reference to Santiago's testimony that transitory employees do not have a reasonable expectation of retaining their jobs after their contracts expire, arguing that plaintiffs' expert had distorted the law in suggesting otherwise. Defense counsel asked rhetorically, "[A]fter the appointment expired . . . what are their [sic] rights of those employees? And that ___ Your Honor is going to tell you, see, in the instructions." Defense counsel noted that, unlike plaintiffs' expert -12- 12 witness, "She never . . . tell [sic] us whether [the ___ plaintiffs] were dismissed or not for political discriminatory reasons. That is for you to decide." Defense counsel did not argue that the reasons for the non-renewals were that plaintiffs' appointments were irregular. Instructions ____________ The judge instructed the jury that its duty was "to follow the law as I shall state it to you" and that it should not "base [its] verdict upon any view of the law other than that given in the instructions of the Court." The court did not otherwise specifically instruct the jury to disregard the expert witnesses' opinions concerning the applicable law, but rather said expert testimony should be treated just as testimony from any other witness. Significantly, however, the judge instructed the jury that any irregularities in the appointments of the plaintiffs could not be used as a pretext for violating their First Amendment rights: Now, conduct purportedly engaged in consonance with the Puerto Rico personnel's law and regulation [sic] does ___ not control a claim alleging a violation of the employees' First Amendment right of political affiliation. A new administration cannot use the doctrine of compliance with state law or nullity under state law as a cover for discharges, transfers and discrimination based solely on political affiliation. Similarly, a new administration cannot use the fact that plaintiffs were hired during the electoral prohibition 13 -13- period or "veda" as a pretext for ____ political discrimination. In the final analysis, the question of motivation is a question of fact. The court also instructed: If you find that plaintiffs' political affiliation was the motivating factor for the non-renewal of their appointments, then you may find for the plaintiffs. The court also gave this instruction: However, if you find that plaintiffs' appointments were not renewed because they had been appointed by the former administration in violation of the personnel and electoral laws and not because of plaintiffs' political affiliation, then you may find for the defendants. The judge further instructed that, although transitory employees do not have tenure in their jobs, their contracts may not be allowed to expire for political reasons.7 Finally, in response to a request from plaintiffs' counsel  ____________________ 7. The Court: "Transitory -- the plaintiffs in this action were transitory employees of the Municipality of Canovanas. Puerto Rico law permits the employment of transitory employees appointed for a fixed term. The duration of this designation shall correspond to the period for which the position was created. "The law provides that once a transitory appointment expires, defendant may terminate the transitory employee . . . for any reason except if that reason is based on political affiliation. Defendant . . . asserts that the reason for not renewing plaintiffs' appointments or contracts was that plaintiffs' contracts had expired and that they were not renewed for valid reasons wholly independent of plaintiffs' political affiliation. "Plaintiffs claims [sic] that their position as ___ transitory employees were not renewed because of their political affiliation. So that is the issue." -14- 14 for a curative instruction, the judge instructed that the jury was to consider only evidence that they believed was known to the decisionmakers at the time plaintiffs' contracts were not renewed.8 Verdict _______ The verdict form asked, as to each of the plaintiffs, "Do you find by a preponderance of the evidence that the motivating factor for not renewing the appointment of [plaintiff] was [his or her] political affiliation?" The jury answered no in each case. III. III We review the district court's decision to admit or exclude evidence for abuse of discretion. See General ___ _______ Electric Co. v. Joiner, 1997 WL 764563, at *3 (U.S. Dec. 15, ____________ ______ 1997); Knowlton v. Deseret Med. Inc., 930 F.2d 116, 124 (1st ________ __________________ Cir. 1991). Legal Principles ________________ Because the parties exhibit some confusion over long-established legal principles in this area, we repeat them. In Elrod v. Burns, 427 U.S. 347 (1976), a divided _____ _____  ____________________ 8. The Court: "In determining whether the defendants discriminated or not, you are not to consider any testimony or evidence that you believe was not present at the time of [sic] the decision not to renew plaintiffs' transitory ___ appointment was taken, for if the irregularity or misconduct was not discovered until after the employee's contract was not renewed, the employer could not have been motivated by knowledge of it, and he cannot now claim that the employee's contract was not renewed for that reason." -15- 15 Supreme Court granted some First Amendment protection to employees terminated because of their political affiliation where political affiliation was not a reasonably appropriate requirement for the job. See id. at 359 (plurality opinion). ___ ___ As Justice Stewart, concurring, said, a "nonpolicymaking, nonconfidential government employee [cannot] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." Id. at 375 (Stewart, J., concurring in ___ judgment). In Branti v. Finkel, 445 U.S. 507 (1980), the ______ ______ Supreme Court reaffirmed Elrod, and explained that the First _____ Amendment prohibits termination of public employees because of their political affiliation unless "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518.9 ______ This court has held that the Elrod-Branti doctrine _____ ______ applies to a local government's decision whether to renew the contract of a transitory employee. See Cheveras-Pacheco v. ___ ________________ Rivera-Gonzalez, 809 F.2d 125 (1st Cir. 1987). A _______________ municipality may not allow transitory employees' contracts to expire if the primary motive is to punish them for their political affiliation. See id. at 127-29. This is true ___ ___  ____________________ 9. Defendants have never suggested that political party affiliation was an appropriate requirement for any of the jobs that were held by the plaintiffs. -16- 16 regardless of whether the employees have been renewed on a regular basis prior to their dismissal or, as is true of some of plaintiffs here, have served only one term. See Figueroa ___ ________ v. Aponte-Roque, 864 F.2d 947, 951 (1st Cir. 1989). Thus, ____________ the fact that a transitory employee does not have a reasonable expectation of renewal in his or her employment that would require due process protections does not defeat a First Amendment claim. In Rutan v. Republican Party of Ill., 497 U.S. 62 _____ _________________________ (1990), the Supreme Court held that the Elrod-Branti _____ ______ prohibition against political affiliation discrimination applied not only to discharges, but also to significant personnel decisions such as whether to hire or promote a public employee. See Rutan, 487 U.S. at 79. Hence, even if ___ _____ the decision not to renew a transitory appointment10 is considered a hiring decision rather than a discharge, Rutan _____ reinforces our rule announced in Cheveras-Pacheco.  ________________  ____________________ 10. As a practical matter, given the Commonwealth's merit- based system for hiring and discharging civil service employees, the risk is greater that transitory employees, who may be more easily hired and fired, may suffer from the use of unlawful patronage practices. See 21 L.P.R.A. 4554. It ___ has been said that "invidious political [party] discrimination is mainly directed against humble public employees or [those] with scarce resources." Casiano v. _______ Departamento de Educacion, 97 J.T.S. Case No. 33, at p. 718 _________________________ (P.R. Sup. Ct. March 19, 1997) (Fuster-Berlingeri, J., dissenting from denial of certiorari). -17- 17 And the Elrod-Branti-Rutan principle has been _____ ______ _____ reinforced recently by the Supreme Court. In Board of County _______________ Comm'rs v. Umbehr, 116 S. Ct. 2342 (1996) and O'Hare Truck _______ ______ ____________ Serv., Inc. v. City of Northlake, 116 S. Ct. 2353 (1996), the ___________ _________________ Supreme Court held that the First Amendment provides protection to independent contractors similar to those afforded government employees. See Umbehr, 116 S. Ct. at ___ ______ 2345-46 (termination of a contract in reprisal for contractor's criticism of county government); O'Hare, 116 S. ______ Ct. at 2355-56 (removal of an independent contractor from a list of towing services employed by the city in retaliation for supporting opposing political party).  Expert Testimony on the Law ___________________________ Aspects of Santiago's testimony are very troubling. Certain parts of her testimony -- for example, concerning actual personnel practices, the various categories of public employees and the like -- are unobjectionable. But Santiago also testified as to the holdings of various opinions of the Supreme Court of Puerto Rico and by reference, of this court (over objection), and to the legal conclusion that these appointments were in violation of law (without objection). To exacerbate matters, her testimony may be charitably described as misleading at best as to the rights of transitory employees as a matter of federal law. -18- 18 It is black-letter law that "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." United States v. Newman, 49 F.3d 1, _____________ ______ 7 (1st Cir. 1995) (quoting Marx & Co. v. Diners' Club, Inc., __________ __________________ 550 F.2d 505, 512 (2d Cir. 1977)). At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony, and we now join them as to the general rule. See Burkhart v. Washington Metro. Area Transit Auth., 112 ___ ________ ______________________________________ F.3d 1207, 1212-14 (D.C. Cir. 1997) (reversible error to allow an expert in police practices to opine on whether police officers' efforts in communicating with a deaf plaintiff were enough to satisfy federal disability statutes); Snap-Drape, Inc. v. Commissioner, 98 F.3d 194, ________________ ____________ 197-98 (5th Cir. 1996) (trial court properly excluded taxpayer's expert reports as containing nothing more than legal arguments concerning the tax treatment of certain dividends); Berry v. City of Detroit, 25 F.3d 1342, 1353-54 _____ ________________ (6th Cir. 1994) (finding inadmissible the comments of an expert in police practices on the meaning of the legal term "deliberate indifference" in a civil rights case); Aguilar v. _______ International Longshoreman's Union, Local #10, 966 F.2d 443, ______________________________________________ 447 (9th Cir. 1992) (testimony of purported expert that workers reasonably and foreseeably relied on defendants' promises addressed "matters of law for the court's determination" that were "inappropriate subjects for expert -19- 19 testimony"); Specht v. Jensen, 853 F.2d 805 (10th Cir. 1988) ______ ______ (en banc) (reversible error to allow an expert witness who was an attorney to give his opinions on what was required to make consent to a search effective); Adalman v. Baker, Watts _______ ____________ & Co., 807 F.2d 359, 366 (4th Cir. 1986) (finding ______ inadmissible proffered expert opinion concerning whether, under securities laws, disclosure of a particular fact was required in the course of negotiating a transaction); Marx & ______ Co. v. Diners' Club, Inc., 550 F.2d 505 (2d Cir. 1977) ___ ____________________ (securities lawyer, called as an expert, could not testify to the legal obligations created under a contract). To state the general rule is not to decide the far more complicated and measured question of when there is a transgression of the rule. We outline some of the considerations and conclude that the rule has been transgressed here. We leave to future cases the defining of the contours of application of this rule. In our legal system, purely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge. Accordingly, expert testimony on such purely legal issues is rarely admissible. As the Second Circuit has noted, "The danger is that the jury may think that the 'expert' in the particular branch of the law knows -20- 20 more than the judge -- surely an impermissible inference in our system of law." Marx & Co., 550 F.2d at 512. __________ The one well-recognized exception is for questions of foreign law, where the judge may be aided by the expert's assistance. See Adalman, 807 F.2d at 366; Marx & Co., 550 ___ _______ ___________ F.2d at 510; 1 McCormick on Evidence 12, at 50 (John W. ______________________ Strong, ed., 4th ed. 1992); 7 Wigmore on Evidence 1953 ____________________ (Chadbourne rev. 1978). Even in the case of foreign law, under modern practice the testimony is generally given to the judge, outside of the presence of the jury, and is meant to assist the judge in determining the appropriate instructions. See Adalman, 807 F.2d at 366; 9 Wigmore on Evidence 2558 ___ _______ ___________________ (Chadbourne rev. 1978). Here, the testimony was plainly not offered to assist the judge, who has presided over many such political discharge cases, and was presented to the jury. Because the jury does not decide such pure questions of law, such testimony is not helpful to the jury and so does not fall within the literal terms of Fed. R. Evid. 702, which allows expert testimony "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." As the D.C. Circuit noted, "Expert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect . . . ." Burkhart, ________ 112 F.3d at 1212; see also Aguilar, 966 F.2d at 447 (expert ___ ____ _______ -21- 21 legal opinion does not assist the factfinder under Rule 702). This is because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial. See Burkhart, 112 F.3d at 1213 ("Each courtroom ___ ________ comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards."); 7 Wigmore on Evidence 1952 ____________________ (Chadbourne rev. 1978) ("It is not the common knowledge of the jury which renders the witness' opinion unnecessary, but the special legal knowledge of the judge.") Similarly, Fed. R. Evid. 704(a), which removes the common-law bar on "otherwise admissible" testimony that "embraces an ultimate issue to be decided by the trier of fact," does not vitiate the rule against expert opinion on questions of law. The common law did not allow an expert witness to inform the jury of his or her factual conclusion concerning the "ultimate issue" in the case, because this was thought to invade the province of the jury. The abolition in Rule 704(a) of this "ultimate issue" rule allows the expert witness to offer his or her factual conclusion in order to aid the jury, which properly can choose to accept or reject it. However, questions of law are not "to be decided by the trier of fact"; rather it is for the judge, not the lawyers or the witnesses, to inform the jury of the law applicable in -22- 22 the case and to decide any purely legal issue.11 Recently, this court has cautioned that the abolition of the "bar on 'ultimate issue' opinions . . . is not a carte blanche for experts." Dincov. Dylex,Ltd.,111 F.3d964,973 (1stCir.1997).12 _____ __________ While the testimony by Santiago described above clearly transgressed the general rule, we acknowledge that it is often difficult to draw the line between what are questions of law, what are questions of fact, and what are mixed questions. See, e.g., In re Air Disaster at Lockerbie, _________ ________________________________ Scotland on December 21, 1998, 37 F.3d 804, 826-27 (2d Cir. ______________________________ 1994) (regarding expert's testimony that defendants engaged in "fraud" and "deceit" admissible because the terms were used in layman's sense, while finding expert's conclusion  ____________________ 11. For similar reasons, the question of whether a legal rule has been clearly established, in the context of a qualified immunity defense to a 1983 action, is a question decided by the court, not the jury. See St. Hilaire v. City ___ ___________ ____ of Laconia, 71 F.3d 20, 24 (1st Cir. 1995). Thus, the Eighth __________ Circuit found reversible error in allowing a witness to espouse views concerning the reasonableness of an officer's conduct in light of prevailing "Fourth Amendment standards." Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. ________ _________________ 1995). The jury's role was only to decide what facts were known to the officer at the time of the arrest, not whether, in light of those facts, the officer's conduct was reasonable under the applicable legal standard and therefore protected by qualified immunity. See id.  ___ ___ 12. Santiago was competent to testify that plaintiffs' appointments were irregular in the sense that they did not conform to normal personnel practice, but her legal conclusion that the appointments were in violation of the law was improper. Because there was no objection to such conclusions, our review is for plain error, a burden plaintiffs cannot sustain in light of our harmlessness analysis. -23- 23 that defendants violated FAA regulations inadmissible); Specht, 853 F.2d 805, 809 (discussing the distinction). ______ Indeed, the definition of what is law and what is application or practice may be difficult to ascertain. This may be particularly so when the issues involve not only a statute and formally promulgated regulations, but also guidelines, handbooks, advisory rulings, interpretive bulletins, general counsel's letter opinions, informational notices and similar accoutrements of the modern bureaucratic state. Further, there may be particular areas of law, such as legal malpractice, where expert testimony on legal matters is admissible where it would normally be excluded. We can also hypothesize instances in rare, highly complex and technical matters where a trial judge, utilizing limited and controlled mechanisms, and as a matter of trial management, permits some testimony seemingly at variance with the general rule.13 But none of those instances are before us. The issues raised here are routinely before the federal courts, are not complex, and the use of such testimony was egregious. Testimony Re After-Acquired Evidence ____________________________________  ____________________ 13. Such an instance may be patent litigation, in which technical experts are generally allowed to comment on the scope of a patent's coverage and give their conclusions on the issue of infringement. See Snellman v. Rioch Co., 862 ___ ________ __________ F.2d 283, 287 (Fed. Cir. 1988); Stearns Co. v. United States, ___________ _____________ 324 Fed. Cl. 264, 268-69 (1995).  -24- 24 There is a second reason the admission of Santiago's testimony is very troubling. That has to do with application of the after-acquired evidence doctrine.14 In McKennon v. Nashville Banner Publ'g Co., 115 S. Ct. 879 ________ _____________________________ (1995), the Supreme Court considered whether an employee's wrongdoing, discovered after the termination of employment, which would have been sufficient to justify the decision, but which was not known to the employer at the time of the decision and so could not have motivated the decision, foreclosed a claim of age discrimination. See id. at 882. ___ __ The Supreme Court held that such evidence was not relevant to ___ the employer's liability for age discrimination, but would be relevant in determining what remedy was appropriate. See id. ___ ___ at 885. If the evidence would have led to the employee's discharge at some later date, that would affect the measure  ____________________ 14. A question may be raised whether the evidence of irregularities that Santiago described meets the definition of after-acquired evidence under McKennon v. Nashville Banner ________ ________________ Publ'g Co., 116 S. Ct. 879 (1995). McKennon concerned ___________ ________ employee wrongdoing that would normally cause termination of employment. We do not know if the irregularities alleged in this case would in fact normally lead to termination or non- renewal of employment. In addition, McKennon expressly ________ considered the equitable doctrine of unclean hands in determining that "the employee's wrongdoing must be taken into account, lest the employer's legitimate concerns be ignored." Id. at 360. Here, as the evidence was presented, ___ it was apparently the former administration, not the employees, who made the appointments allegedly against normal procedures. If the employees were blameless, it may be difficult to import wholesale the McKennon doctrine. Given ________ the desultory treatment of this aspect of the McKennon issue ________ by the parties and our disposition of the case, we think it wiser to address the issue in some future case. -25- 25 of damages and the appropriateness of reinstatement as equitable relief. See id. at 885-86. In Umbehr, the Supreme ___ ___ ______ Court adopted the McKennon approach in First Amendment claims ________ brought by public employees or contractors. See Umbehr, 116 ___ ______ S. Ct. at 2352 ("[I]f [plaintiff] prevails, evidence that [defendants] discovered facts after termination that would have led to a later termination anyway . . . would be relevant in assessing what remedy is appropriate."). Thus, such after-acquired evidence is normally admissible only as to remedy, and not on liability. Yet here, it was seemingly offered, over objection, as pertinent to liability. Those portions of Santiago's testimony concerning the irregularities in plaintiffs' appointments which did not consist of legal conclusions were arguably relevant to damages, but normally, not to liability. On appeal, plaintiffs only argue the issue of admissibility, and the evidence was arguably admissible on damages.15 To prevail, plaintiffs must show abuse of discretion in admission of the evidence. Any abuse of discretion analysis is complicated by the actions of the  ____________________ 15. The trial court erred in failing to instruct the jury that Santiago's testimony was not relevant in determining liability. Although the judge properly instructed the jury that it should not consider evidence that it did not believe was before the decision maker at the time of the decision, the risk of prejudice was such that the judge should have stated explicitly that Santiago's testimony concerning irregularities was not to be considered in any way on the question of liability. -26- 26 parties here. While much of Santiago's testimony would normally be inadmissible, plaintiffs may have invited defendants to respond in kind. It was apparently plaintiffs who first introduced the topic of legal conclusions to be drawn from review of plaintiffs' personnel files and of the law about rights of public employees. Plaintiffs argued that the files showed no disciplinary warnings or other actions by the employers which provided cause for termination of their employment, and their expert may have engaged in inappropriate legal commentary. Defendants apparently did not object, perhaps because they wanted to respond in kind. The trial judge evidently felt that this opened the door to the defendants' expert. "Opening the door" is an evidentiary concept which requires careful weighing of the unfairness of allowing one party's objectionable evidence to remain unanswered against the danger of compounding the problem with further inadmissible and potentially prejudicial testimony. See 1 McCormack on Evidence 57 (John W. Strong, ___ _____________________ ed., 4th ed. 1992). The judge may well have felt that plaintiffs created the problem about which they now complain. As plaintiffs did not provide this court with a transcript of their own expert's testimony, we do not reach the question of whether the judge abused his discretion in allowing Santiago's problematic testimony under an "opening the door" theory. -27- 27 To overcome the jury verdict, plaintiffs must show not only that there were errors under the abuse of discretion standard, but also that the district court's errors were harmful. "Only if we answer both questions in the positive will [plaintiffs'] argument on appeal prevail." Ahern v. _____ Scholz, 85 F.3d 774, 786 (1st Cir. 1996). ______ Harmless Error ______________ In a civil case, the party asserting error bears the burden of demonstrating that the error was harmful, i.e., that it affected that party's substantial rights. See Fed. ___ R. Civ. P. 61; Fed. R. Evid. 103; Federico v. Order of St. ________ _____________ Benedict in R.I., 64 F.3d 1, 3 (1st Cir. 1995) (burden of _________________ showing harmful error in a civil case is on party asserting error); Hygh v. Jacobs, 961 F.2d 359, 364-65 (2d Cir. 1992) ____ ______ (holding that objecting party had not met burden of showing that admission of improper legal opinion testimony had prejudicial effect). "In determining whether an error affected a party's substantial right[s], the central question is whether this court can say with fair assurance . . . that the judgment was not substantially swayed by the error." Ahern, 85 F.3d at 786 (citations, internal quotation marks _____ and original alterations omitted). Factors considered in determining the likelihood that the jury's verdict was substantially swayed by the evidentiary error include both the centrality of the evidence -28- 28 and the prejudicial effect of its inclusion or exclusion. See id. "We weigh these factors in the context of the case ___ ___ as gleaned from the record as a whole." Id. (citation and ___ internal quotation marks omitted). Ultimately, if we are in "grave doubt" concerning the likely effect of the error on the verdict, we treat the error as if it had affected the verdict. See id. ___ ___ Although normally testimony such as Santiago's as to legal conclusions is clearly wrong and such testimony as was proper is limited, at best, to damages, we cannot say that the testimony affected the outcome of the trial, and therefore, we consider it harmless.16  The district court's instructions here reinforce the conclusion that Santiago's testimony was not central nor did it actually prejudice the jury's decision. The judge properly instructed that "once a transitory appointment expires, defendant may terminate the transitory employee . . . for any reason except if that reason is based on ______ __ ____ ______ __ _____ __ political affiliation." (emphasis added) The judge _________ ___________ instructed, not once but several times, that the central issue for the jury to decide was whether the motive for  ____________________ 16. That plaintiffs apparently opened the door to such testimony also bears on the harmless error analysis. The jury may have had two "experts" each opining on the law and may have disregarded both experts as not helpful on the key question of motive. In this case, the question of motive was a straightforward question of whom the jury believed, the Mayor or the plaintiffs. -29- 29 plaintiffs' non-renewals was their political affiliation. Finally, the verdict form itself posed the question, "Do you find by a preponderance of the evidence that the motivating factor for not renewing the appointment of [plaintiff] was [his or her] political affiliation?" The judge did expressly caution the jury that the municipal defendants could not use compliance with state law as a pretext for political discrimination. The district court instructed the jury that they were not to consider any facts that were not known to the relevant decision makers at the time plaintiffs' contracts were allowed to expire in deciding whether Soto's administration let plaintiffs go because of their political affiliation.17 As the district court explained, "if the irregularity or misconduct was not discovered until after the employee's contract was not renewed, the employer could not have been motivated by knowledge of it, and he cannot now claim that the employee's contract was not renewed for that reason." Thus, we do not find it likely, despite Santiago's testimony, that the jury was confused about the rights of  ____________________ 17. In finding any error harmless, we need not decide whether the admission of the evidence was erroneous in the first instance. Plaintiffs themselves represented to the court that Soto's knowledge of the illegalities was a viable factual issue for the jury. Plaintiffs asked for and received an instruction, which they said "would be curative" of the McKennon problem, that the jury should disregard the ________ illegality evidence "if they believed that [the illegalities] were discovered after the fact."  -30- 30 transitory employees under the First Amendment. As in Caro, ____ the issue in this case was "the factual matter of [the municipality's] reason for dismissing the plaintiffs. Was [its] motive political?" Caro, 878 F.2d at 2. The jury ____ answered that question. As we harbor no "grave doubt," the judgment of the district court is affirmed. Costs to ________ appellees. -31- 31