Vilmarie TORRES SANTA,
et al., Plaintiffs,

v.

Cesar REY HERNANDEZ,
et al., Defendants.

No. CIV. 01–2223(PG).

United States District Court,
D. Puerto Rico.

Aug. 25, 2003.

Pablo Landrau-Pirazzi, Ivan M. Castro–Ortiz, Hato Rey, PR, Eliezer Aldarondo–Ortiz, Claudio Aliff–Ortiz, Aldarondo & Lopez Bras, Hato Rey, PR, for plaintiffs.

Zuleika Llovet–Zurinaga, San Juan, PR, for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

On July 24, 2003, the Court granted Defendants' "Motion Requesting Leave to Use at Trial Documents in the Spanish Language." (Order, Docket No. 75). Aware of the First Circuit's opinion in *United States v. Rivera–Rosario,* 300 F.3d 1 (2002) ("[W]hen a district court violates the English language requirement and allows non-English language evidence to be admitted without translation, both parties are prejudiced by the fact that the appellate court cannot review the non-English language evidence."), the Court stated that it intended to enter a subsequent opinion setting forth its reasons why Docket No. 75 was ruled favorably. The Court now expands on its decision to admit the trial documents in Spanish.

## DISCUSSION

Pursuant to *Rivera–Rosario,* the United States Court of Appeals for the First Circuit will not consider non-English language evidence admitted by the district court without a translation, even if the parties

submit certified translations at the appellate stage. 300 F.3d at 10. In *Rivera–Rosario*, the district court had admitted as evidence some tapes in Spanish. The jury was given a transcript in Spanish of the tapes, but did not receive English translations of the transcript. The transcripts were not admitted into evidence, marked as exhibits, or made part of the record. On appeal, the First Circuit held that the district court's actions violated the English language requirement of the Jones Act, 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."). *Rivera–Rosario*, 300 F.3d at 6–8. Moreover, it rejected the government's suggestion that such violations of the Jones Act can be remedied "by simply supplementing the record on appeal to include a certified English translation of the Spanish tapes." *Id.* at 9. Although recognizing that such a remedy was "tantalizingly efficient," the First Circuit stated that it was "beset with procedural and substantive difficulties that ultimately make it unappealing." *Id.*

■ The First Circuit focused on two major "procedural and substantive difficulties" to reject the government's remedy. First, it concluded that allowing the parties to provide a certified English translation of the Spanish tapes on appeal did not fall within the purview of Federal Rule of Appellate Procedure 10(e). *Id. See generally* Fed. R.App. P. 10(e) (allowing for the correction and modification of the record). Admitting such translations would impermissibly expand the record by presenting to the court of appeals evidence that had not been considered by the judge or the jury in the district court. *Rivera–Rosario*, 300 F.3d at 9; *see also id.* at 21–22 ("[A]ppellate courts cannot properly review district court convictions on the basis of translations, later claimed as evidence,

that were neither read nor heard by the jury."). Second, the court held that the remedy was "too dismissive of the Jones Act." *Id.* at 10. The court feared that it "would conceivably enable district courts to conduct entire trials in Spanish, only to have the record translated on appeal." *Id.* Concluding that the admittance of non-English language evidence infringes on "an appellant's right to meaningful appellant review," the court held that "violations of the English language requirement will constitute reversible error whenever the appellant can demonstrate that the untranslated evidence has the potential to affect the disposition of an issue raised on appeal." *Id.* Parties are effectively required to submit English translations of all their evidence if they later wish the First Circuit to consider any of it on appeal.

For more than a year now, the Court has abided by the *Rivera–Rosario* holding and required that all non-English documents be submitted with a certified English translation. After a thorough reading of the First Circuit's holding and a long, careful reflection on the consequences of such a requirement, the Court respectfully shares its concerns and suggests that the First Circuit revisit the issue. The Court makes four specific observations in this regard.

First, the First Circuit's strict interpretation of the English language requirement in *Rivera–Rosario* is inconsistent with the deference and flexibility that the First Circuit had shown in dealing with the admission of non-English language evidence in the District of Puerto Rico. The First Circuit's decisions prior to *Rivera–Rosario* certainly reflect this flexibility and deference. Consistent with First Circuit Rule 30(d), the court had merely required that all documents considered *in an appeal* be submitted in the English language. *See Ramos–Baez v. Bossolo–López*, 240

F.3d 92 (1st Cir.2001); *López–Carrasquillo v. Rubianes*, 230 F.3d 409 (1st Cir.2000); *see also* 1st Cir. Local R. 30(d)[1]. Because parties in an appeal often refer only to a portion of the evidence on the record, this mechanism allowed them to submit translations only of those documents that they intended to use in the appeal. Even then, the court had made clear that Rule 30(d) allowed for some flexibility in its application. *See United States v. Colón–Muñoz*, 192 F.3d 210 (1st Cir.1999) ("Despite the wording of the rule, we retain discretion to waive the requirements of the rule in appropriate circumstances."); *Rivera–Gómez v. Castro*, 843 F.2d 631 (1st Cir.1988) (relying on staff translations of Puerto Rico Supreme Court opinions). These cases preceding *Rivera–Rosario* did not criticize the district court for allowing the plaintiffs to submit documents in Spanish, or express any due process or fairness concerns with the district court's decision to admit the Spanish language documents without a translation. Neither did they suggest that parties cannot comply with Rule 30(d) by submitting to the Court of Appeals certified translations of Spanish language documents previously admitted by the district court. The opposite, in fact, is true: the cases suggest that Rule 30(d) is flexible and that the First Circuit would have considered the documents if the plaintiffs had provided a translation of the documents at the time of the appeal. Oddly, the First Circuit in *Rivera–Rosario* neither cited nor discussed these prior decisions.

The First Circuit and this Court's flexibility in dealing with non-English documents is further evidenced by District of Puerto Rico Local Rule 108(1). This Rule provides that "[a]ll documents not in the English language which are presented to or filed in this Court, whether as evidence or otherwise, shall be accompanied at the time of presentation or filing by an English translation thereof, *unless the Court shall otherwise order.*" D.P.R. Local R. 108(1) (emphasis added). This provision clearly gives the District Court the discretion to admit non-English documents as evidence, thus putting it at odds with *Rivera–Rosario*'s holding. Yet, in *Rivera–Rosario* the First Circuit not only failed to strike down Rule 108(1), it cited the Rule approvingly, *see* 300 F.3d at 7 n. 4; *id.* at 7. This apparent contradiction, by itself, merits reconsideration.

Second, the Court respectfully disagrees with *Rivera–Rosario*'s conclusion that allowing certified translations expands the record impermissibly. The First Circuit has emphasized the Rule of Appellate Procedure 10(e) "is not a procedure for putting additional information, no matter how relevant, before the court of appeals that was not before the district court." *Belber v. Lipson*, 905 F.2d 549, 551 n. 1 (1st Cir.1990). But Rule 10(e) does allow appellate courts to supplement the record "so that it accurately reflects what occurred before the district court." *Id.* Submitting certified translations at the appellate stage does not insert any additional information or substance to the record.[2] By definition,

---

1. First Circuit Local Rule 30(d), which was previously numbered as Rule 30.7, reads: "The court will not receive documents not in the English language unless translations are furnished. Whenever an opinion of the Supreme Court of Puerto Rico is cited in a brief or oral argument which does not appear in the bound volumes in English, an official, certified or stipulated translation thereof with three conformed copies shall be filed."

2. For instance, in a case where the only evidence is a letter written in Spanish, the submission of a certified English translation of such a letter does not add any new information or substantive evidence to the record. The letter still stands as the only evidence, albeit with a Spanish and English version. The substantive effects of supplementing in such a way are clearly distinct to those of

a certified translation is a faithful reflection of the original—it neither adds nor subtracts. As such, a certified translation in English of a Spanish document is a facilitator, rather than a modifier; it serves more to accurately reflect what occurred before the district court than to change the record.

Third, the First Circuit's fear that allowing documents to be submitted without an English translation would clear the way to entire proceedings conducted in Spanish is both exaggerated and unfounded. Allowing documents to be considered in Spanish under Local Rule 108(1) in no way gives license for unfettered use of Spanish in the rest of the proceedings. For years, documents have been submitted in Spanish in this Court, yet the remainder of the proceedings have taken place in English. The attorneys still address the court in English; the witnesses still testify in English; and the judge addresses the jury, the attorneys, and his courtroom staff in English. Neither the English language requirement of the Jones Act nor the standing of this Court as a viable part of the federal judicial system are put in jeopardy by a limited exception allowing certain documents to be filed in Spanish in the district court.

Finally, and foremost, the Court submits that the First Circuit's circumscribed concern with "procedural and substantive difficulties" might be prejudicing fundamental rights to access to the courts. *Cf. Christopher v. Harbury*, 536 U.S. 403, 415 n. 12, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) ("Decisions of this Court grounded the right of access to courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses.") (citations omitted). Translating documents from Spanish to English is a time-consuming and costly task. Only certified translations can be submitted, and the cost of these translations and certifications can exceed $15.00 per page and $80 per hour for depositions.[3] (Tr., July 30, 2003, at 6). *Rivera–Rosario* further augments the total costs by effectively requiring parties to translate every potential piece of evidence at the outset just to preserve their right to submit any of that evidence later in the proceedings. Because the issues on appeal are confined and reference to the entire record is often unnecessary, the expense on translations is likely to be superfluous; parties end up spending thousands of dollars to translate of all their documentary evidence, but only a handful, if any, of these documents will be considered by the court of appeals. Resourceful parties can afford these additional costs and might be less likely to complain about the added burden. For many individuals and entities of limited resources, however, litigation is already expensive enough. For them, an additional expense of thousands of dollars on translations—an expense that is often superfluous—can serve as a powerful incentive not to seek redress in the federal courts.

The Court finds particularly troubling the inhibiting and chilling effect that *Riv-*

---

supplementing the record with a deposition transcript, as was the case in *Belber*.

**3.** According to Local Rule 108(2), interpreters "[w]hen not so occupied and in non-working hours ... may assist the parties and their attorneys in the translation of documents required to be used in pending cases, for reasonable compensation, to wit, $6.00 per dou-

ble-spaced typewritten page or part thereof for translating and certifying; and $3.75 per double-spaced typewritten folio or part thereof for comparing and certifying translation made by other interpreters." Non-court certified translators, however, charge higher rates. (Pls.' Mot., Docket No. 83, Ex. 1).

*era–Rosario* can have on a person's right to seek redress in the District of Puerto Rico under 42 U.S.C. § 1983 for violations of his or her civil rights. Section 1983 actions serve "as the basic vehicle for federal court review of alleged state and local violations of federal law." Erwin Chemerinsky, *Federal Jurisdiction* 466 (4th ed.2003). In Puerto Rico, § 1983 claims particularly have become a driving force in the waves of political discrimination cases that arise with every electoral cycle.[4] In contrast with all other state and local governments in the United States, the Commonwealth of Puerto Rico and the municipalities maintain all of their documents—including personnel files, correspondence, and accounting records—in Spanish. Any person contemplating filing a cause of action under § 1983 in this District—regardless of its complexity—inevitably faces the burden and cost of translating hundreds of pages into English, and spending thousands of dollars on translations.[5] These additional costs—often superfluous, as discussed above—are sufficient to dissuade potential plaintiffs from seeking relief in federal court. Even those who decide to weather the costs and seek redress might be forced into the undesirable and potentially prejudicial choice of excluding otherwise admissible and helpful evidence from the record just to save the costs of translation. Such a choice, when imposed solely by monetary considerations, compromises the right to seek redress under § 1983. These detrimental effects of the holding in *Rivera–Rosario* certainly call for a more thorough balancing of the need for strict compliance with procedural provisions and a person's right to access the courts and seek redress for violations of his or her civil rights.

■ The case at hand is a perfect example of the chilling effect that *Rivera–Rosario*'s strict interpretation of the English language requirement can have on a First Amendment claim under § 1983. The Plaintiffs in this case are all government employees suing officials of the Department of Education of the Commonwealth of Puerto Rico under § 1983 for political discrimination. The Plaintiffs are also persons of limited financial resources. (Tr., July 30, 2003, at 4). Plaintiffs informed the Court that a certified translator charged them between $16.50 and

---

4. The First Circuit best summarized this phenomenon: "This court has reviewed numerous claims of political firings or demotions from Puerto Rico. In November of 1984, the PDP won the gubernatorial election in Puerto Rico. Before that, the governor's office was held by a member of the NPP. A first wave of cases involved outright dismissals; the second wave involved adverse actions less than outright dismissals .... In 1992, control of the governor's office and of some local governments switched, and the NPP came back to power. Now, this court is faced with another wave of litigation (we hesitate to count which wave this is), brought this time by PDP members." *Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92, 93 (1st Cir.1997).

5. In § 1983 cases the burden of the costs of translating all these documents inordinately affects the Commonwealth of Puerto Rico, even when the officials are sued in their personal capacities. Under Law 9 of November 26, 1975, officials of the Commonwealth of Puerto Rico sued under § 1983 "due to acts or omissions committed in good faith, in the course of his employment and within the scope of his functions, may request the Commonwealth of Puerto Rico to provide him with legal representation, and to subsequently assume the payment of any judgment that may be entered against his person." 32 P.R. Laws Ann. § 3085. In this case, Defendants, and therefore the Commonwealth of Puerto Rico, have spent $99,472 for the translation of depositions and other documentary evidence. (Defs.' Informative Mot., Docket No. 85, at 1–2). Although these costs do not affect a plaintiff's right to access the courts and seek redress under § 1983, the effect on the public coffers is worth noting.

$26.00, per page, to translate letter-sized documents, and between $24.75 and $39.75 to translate legal-sized documents. (Pls.' Mot., at 2). Translating all of their documentary evidence would have cost them $7,300.50. (Pls.' Mot., at 2). Due solely to the high costs of the translations, Plaintiffs originally had excluded sixty-three out of seventy-five documents from the pretrial order. (Pls.' Mot., at 2). The exclusion of these documents would have prevented Plaintiffs from fully presenting their case before the jury, (Tr., July 30, 2003, at 5), but the high costs of the translations left them with no other choice. At least in this case, then, the First Circuit's decision in *Rivera–Rosario* frustrates § 1983's basic purpose of serving as a vehicle for federal court review of alleged state and local violations of federal law. A decision with such meaningful consequences certainly deserves more careful consideration.

The Court is aware that the predominance of Spanish within the District of Puerto Rico creates procedural difficulties. In this sense, the District of Puerto Rico might be unique. Yet nothing in the experience of this Court or in its relationship with the Court of Appeals for the First Circuit suggests that these difficulties have affected the due process rights of those seeking justice in this District. Neither has there been any indication that these difficulties have put in jeopardy the District of Puerto Rico's standing within the federal judicial system. The predominance of Spanish certainly requires flexibility and creativity in the procedural dealings within the District; it does not, however, present an insurmountable obstacle, or a threat, to the federal judiciary.

The First Circuit certainly raised some valid concerns in *Rivera–Rosario* regarding the right to appellate review and compliance with appellate procedural provisions. The Court fears, however, that in so circumscribing its analysis the First Circuit did not consider the full effects and implications of its ruling. The First Circuit historically had shown flexibility when dealing with the admission of non-English language evidence in the District of Puerto Rico, yet *Rivera–Rosario* breaks away from this tradition and practice without even mentioning the precedents that support this history of flexibility. To add to the confusion, the First Circuit approvingly cited a procedural provision, Local Rule 108(1), that permits the very practice that *Rivera–Rosario* condemns. More troubling, the application of *Rivera–Rosario* has had a detrimental and inhibiting effect on the right to access the courts and, specifically, on the right to seek redress under § 1983 for violation of civil and constitutional rights. These are consequences that the First Circuit might not have foreseen, and certainly did not discuss, in *Rivera–Rosario*. With the benefit of first-hand experience, and recognizing that "the process of trial and error, so fruitful in the physical sciences, is appropriate also in the judicial function," *Burnet v. Colorado Oil & Gas Co.*, 285 U.S. 393, 406–408, 52 S.Ct. 443, 76 L.Ed. 815 (1932), the Court respectfully submits its concerns and urges the First Circuit to revisit its holding in Rivera–Rosario in light of the observations and concerns contained in this Opinion.

**SO ORDERED.**