Isabel **ALBURQUERQUE**,
et al., Plaintiffs,

v.

Antonio **FAZ ALZAMORA**,
et al., Defendants.

No. CIV.02–1081(HL).

United States District Court,
D. Puerto Rico.

Dec. 9, 2004.

Antonio Borres–Otero, Esq., Fernando L. Gallardo, Esq., for Plaintiffs.

Alberto O. Jimenez–Santiago, Isabel Maria Rodriguez–Casellas, Juan R. Gonzalez–Munoz, Salvador J. Antonetti–Stutts, Yvonne M. Menendez–Calero, Vanesa Vicens, Marcos A. Ramirez–Lavandero, for Defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is the United States Magistrate Judge's Report and Recom-

mendation ("Report") (Docket No. 73) recommending that defendants' amended motion for summary judgment (Docket No. 42) be granted in part and denied in part. Also before the Court are defendants' objections to the Report (Docket No. 81); plaintiffs' objections to the Report (Docket No. 79); and plaintiffs' reply to defendants' objections (Docket No. 88). For the reasons stated below, the Court **ADOPTS in part** the Magistrate Judge's Report and Recommendation (Docket No. 73). Accordingly, defendants' amended motion for summary judgment is **GRANTED in part and DENIED in part** (Docket No. 42).

Plaintiffs bring this action under 42 U.S.C. § 1983, claiming political discrimination in their employment in violation of the First, Fifth, and Fourteenth Amendments of the United States Constitution, as well as violations under state law. Defendants argue that plaintiffs' claims should be dismissed because plaintiffs have failed to establish a prima facie case of political discrimination, plaintiffs lack a due process entitlement in their employment, and defendants enjoy legislative and/or qualified immunity in their employment decisions as to plaintiffs.

## STANDARD OF REVIEW

A district court, may on its own initiative, refer a pending matter to a United States Magistrate Judge for a report and recommendation. Fed.R.Civ.P. 72(b); D.P.R. R. 72. Under Rule 72(b) of the Federal Rules of Civil Procedure, the Court is obligated to make a "de novo determination ... of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." Fed.R.Civ.P. 72(b). The Court thereafter "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1 (1st Cir.1999) (quoting 28 U.S.C. § 636(b)(1)(C)).

## FACTUAL BACKGROUND

The facts leading up to the employment actions in question are undisputed. The Magistrate Judge aptly summarized these facts in her Report and Recommendation. (Docket No. 73 at 1–3.) In the 2000 general elections the Popular Democratic Party ("PDP") gained a majority in both houses of the Puerto Rico legislature. On January 2, 2001, in the interim before the newly elected President took charge, the Acting President Luis D. Pastrana Roman ordered a six (6) month renewal of all transitory employees' contracts that had expired on December 31, 2000. Defendant Antonio Faz Alzamora was elected President of the Senate on January 8, 2001. Defendant Faz Alzamaroa took office later that month and reversed the six-month renewals, allowing an extension of the transitory employees' contracts until only January 31, 2001. Thereafter, a reorganization of the various Senate offices was implemented, resulting in the creation of new offices, as well as a classification plan for administrative employees that entailed a description of duties and a uniform pay scale.

From January 2001 to June 2001, plaintiffs were all dismissed from their positions in Senate offices. Plaintiffs allege that they were dismissed because they are affiliated with the New Progressive Party ("NPP"). Plaintiffs filed the present case for monetary and injunctive relief, claiming political discrimination in their employment which caused violations to their federal constitutional and state rights. Plaintiffs bring this action against Antonio Faz Alzamora, President of the Senate of the Commonwealth of Puerto Rico; José A. Nazario Alvarez, Secretary of the Senate of the Commonwealth of Puerto Rico; and Luis D. Pastrana Roman, Director of the Office of Human Resources of the Senate of the Commonwealth of Puerto

Rico. Defendants filed an amended motion for summary judgment (Docket No. 42) claiming that the employment actions were not politically motivated, plaintiffs did not establish a prima facie case of political discrimination, plaintiffs had no due process entitlement in their employment, and defendants enjoy legislative and/or qualified immunity. This motion and its corresponding objections and replies were referred to a magistrate judge for report and recommendation. (Docket No. 66.)

The Magistrate Judge issued a Report and Recommendation recommending that defendants' amended motion for summary judgment be granted in part and denied in part. (Docket No. 73.) The Report recommends that all plaintiffs due process claims be dismissed on the grounds that all plaintiffs lacked a property interest in their positions. *Id.* at 14. The Report identifies ten [1] plaintiffs as employees who performed functions with meaningful input in the legislative process and for whom political affiliation was a proper employment requirement. *Id.* at 32. The Report recommends that defendants be afforded legislative and/or qualified immunity as to these ten plaintiffs. *Id.* The Report further recommends that summary judgment be denied as to the remaining plaintiffs' First Amendment claims. *Id.* at 33.

Defendants object to the Magistrate Judge's Report on the following grounds: (1) plaintiffs have not met their burden of establishing a prima facie case of political discrimination, (2) the Report does not include any recommendation regarding plaintiffs José Alicea Lugo, José Castro Lassus, and José Burgos, and (3) defendants are entitled to legislative or qualified

immunity as to all plaintiffs. (Docket No. 81.) Plaintiffs have the following objections to the Report: (1) none of the plaintiffs' positions were at-will, (2) the due process analysis of the Report failed to address the plaintiffs that held permanent positions, (3) the positions classified as transitory had a due process interest in their continued employment, (4) plaintiffs' job descriptions are contested, so triable issues remain as to whether any employee held a position for which political affiliation was an appropriate job requirement. (Docket Nos. 79, 88.)

## DISCUSSION

### I. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. *Morris v. Gov't Dev. Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir.1994); *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining if a material fact is "genuine" the Court does not weigh the facts but, instead, ascertains whether

---

**1.** The Magistrate Judge's Report includes individuals that are no longer plaintiffs in this case. This action was brought by thirty-one (31) former employees. *See* Amended Complaint, (Docket No. 20.) Three (3) former

employees (and their respective conjugal partnerships) have since ceased to be parties to this case: Jorge Pérez García, Zonia Lobera Rodríguez, and Camille Rodríguez Baez. (Docket No. 91).

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Leary v. Dalton,* 58 F.3d 748, 751 (1st Cir.1995).

■ To aid the Court in the task of identifying genuine issues of material fact in the record, the District for Puerto Rico has adopted Local Rule 56(b) (formerly Local Rule 311.12). D.P.R. R. 56(b). Local Rule 56(b) requires that a party moving for summary judgment submit, in support of the motion, "a separate, short, and concise statement of material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record." *Id., Leary,* 58 F.3d at 751. The Court will only consider the facts alleged in the parties' Local Rule 56 statements when entertaining the movant's arguments. *Rivera v. Telefonica de Puerto Rico,* 913 F.Supp. 81, 85 (D.P.R.1995).

■ Once a party moves for summary judgment, it bears the initial burden. Specifically, " 'a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] ... which it believes demonstrate the absence of a genuine issue of material fact.' " *Crawford–El v. Britton,* 523 U.S. 574, 600 n. 22, 118 S.Ct. 1584, 1598 n. 22, 140 L.Ed.2d 759 (1998) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed.R.Civ.P. 56(e); *Libertad v. Welch,* 53 F.3d 428, 435 (1st Cir.1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Furthermore, the nonmovant "must do more than simply show that there is some metaphysi-cal doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. Political Discrimination

■ To make a prima facie case of political discrimination a "plaintiff must show that [s/he] engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision." *Padilla–Garcia v. Guillermo Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000). This requires more than merely "juxtaposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly." *Id.* (quoting *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 58 (1st Cir.1990)). Indeed, evidence that a plaintiff is politically active and that a defendant is aware of plaintiff's opposing views is not sufficient to meet this burden. *Rodriguez–Rios v. Cordero,* 138 F.3d 22, 24 (1st Cir.1998). Instead, to prevail, a plaintiff must point to evidence in the record that would "permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." *Rivera–Cotto v. Rivera,* 38 F.3d 611, 614 (1st Cir.1994).

■ "The First Amendment protects associational rights. Incorporated with this prophylaxis is the right to be free from discrimination on account of one's political opinions or beliefs." *Galloza v. Foy,* 389 F.3d 26, 28–29 (1st Cir.2004) (citing *LaRou v. Ridlon,* 98 F.3d 659, 661 (1st Cir.1996)). Generally, a government employer cannot discharge public employees on the basis of their political affiliation. *Id.* (citing *Elrod v. Burns,* 427 U.S. 347, 350, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). An exception to this rule is when "political affiliation is an 'appropriate requirement

for the effective performance of the public office involved.'" *Id.* (citing *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980)). "[T]he Supreme Court has decreed that a public employer, as a prerequisite for discharging an employee for political reasons, must demonstrate that political affiliation is an appropriate requirement for the position in question. This means, in effect, that the employer must show that the position is confidential or policymaking in nature." *Id.* (citing *Elrod*, 427 U.S. at 362–63, 367, 96 S.Ct. 2673)).

▪ Therefore, as an initial matter the Court must determine whether the plaintiffs' positions were confidential or policymaking in nature. Such a determination necessitates a two part inquiry. First, the Court must make an inquiry into the purpose of the employing agency and the role that the particular position occupies within it. *Id.* at 29. Specifically, the Court must ascertain "whether the agency employing the plaintiff handle[s] matters potentially subject to partisan political differences," and whether the particular employee's position has the capacity to "influence the resolution of such matters." *Mendez–Palou v. Rohena–Betancourt*, 813 F.2d 1255, 1258 (1st Cir.1987). Second, the Court must consider "whether the specific responsibilities of the position sufficiently resemble those of a policymaker or officeholder whose functions are such that party affiliation is an appropriate criterion for tenure." *Galloza*, 389 F.3d at 29 (1st Cir. 2004) (citing *Mendez–Palou*, 813 F.2d at 1258)). Factors that may be considered in discerning between non-policymakers and policymakers include: the relative compensation level for the position; technical expertise required for the job; supervision and control over others; authority to speak in the name of policymakers; influence of the position over programs or policy initiatives; public perception of what the position entails; the relationship of the

position to elected officials, party leaders, and partisan politics; and "whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Id.* (quoting *Elrod*, 427 U.S. at 368, 96 S.Ct. 2673).

▪ The parties both object to the Magistrate's Report and Recommendation on the grounds that the plaintiffs' job duties are in dispute. After review of the record, the Court finds that no genuine issue of fact exists in respect to the plaintiffs' positions or duties. The determination of whether a position is policymaking or confidential in nature does not focus on the "functions a particular occupant of the position may in fact carry out from *time to time*, but, rather, on the *essential* attributes of the position itself." *Id.* (citing *O'Connor v. Steeves*, 994 F.2d 905, 911 (1st Cir.1993); *Jimenez Fuentes*, 807 F.2d at 242)) (emphasis ours). The Court therefore adopts the descriptions of the plaintiffs' positions and duties contained in the Magistrate's Report and Recommendation. (*See* Docket No. 73 at 5–13.)

### A. *"Policymaking" Employees*

▪ . As it is undeniable that the employing agency, the Puerto Rico Senate, handles matters "potentially subject to partisan political differences," the Court must turn its attention to the plaintiffs' individual positions and responsibilities in the specific offices in which they were employed to determine whether the positions "sufficiently relate to partisan political interest or concerns to warrant application of the policymaker exception." *Galloza*, 389 F.3d at 30. Consistent with the Magistrate's Report and Recommendation, the Court finds that the following plaintiffs' positions fall into the policymaking exception and thus are immune from the constitutional prohibition against politically-motivated dismissals: Nery Yanes

Bosch as Sub–Director of the Office of Protocol and Activities; Carmen Zavala Vázquez as Protocol and Activities Officer; Olga Alicea Cardona and Francisca Meléndez Cátala as Interagency Liaison Officers; Debra Feliciano, Ketzy Melecio Alamo, and Wendy Rodríguez Román as Communication Officers;[2] and María Alvarez Villafañe as Programmatic Analysis Assistant.

The functions of the Office of Protocol and Activities ("OPA") include representing the Senate and its President in the organization and promotion of Senate activities and within the executive and judicial branches; planning and coordinating visits of high-ranking officers of the government; and planning activities and formal affairs of the President of the Senate with foreign representatives or other government branches. This office also implements public policy regarding international relations between the Senate and other nations' legislative institutions. Plaintiff Nery Yanes Bosch held the position of Sub–Director of the Office of Protocol and Activities. Her job responsibilities included coordinating the above activities and drafting press releases and other documents to communicate Senate policies to the public. This position coordinated activities that directly represented the Senate and its President to the domestic, as well as, the international public. Intrinsic in this position was the potential for influence over policy initiatives concerning the Senate's international relations with foreign governments.

■ Plaintiff Carmen Zavala Vázquez worked in the OPA as Protocol and Activities Officer. Her responsibilities included coordinating activities promoted by the Senate, participating in the development of work plans related to dissemination and advisement of Senate duties, and working with government and private entities in planing and executing OPA activities. Similar to the Sub-director, this position represented the Senate and its President in high-profile activities and provided ample potential for influence in politically-sensitive Senate programming. Applying the factors set out in *Galloza, Mendez–Palou*, and *Elrod* it is evident that the OPA Sub–Director and the Protocol and Activities Officer positions were policy-making in nature.

■ The function of the Interagency Liaison Office ("ILO") is to maintain communication between legislators and their constituents and to attend to constituents' needs. Plaintiffs Olga Alicea Cardona and Francisca Meléndez Cátala were employed in the ILO as Interagency Liaison Officers. Their duties included addressing and directing citizen applications and requests to the Senate, maintaining resource lists, and visiting other agencies to coordinate services. The Interagency Liaison Officer position represents the Senate to the general public by providing the communication link between the public and their elected representatives. The combination of the position's intimate relationship to and role in partisan politics and the public's inevitable perception of the officers as the representatives of Senate policymakers and office-holders, make party affiliation an appropriate employment criterion for this position. *See Galloza*, 389 F.3d at 29; *Mendez–Palou*, 813 F.2d at 1259.

■ The functions of the Public Information Office ("PIO") include providing information on the legislative process, preparing press releases and press conferences for the Senate President, maintaining and promoting working relationships

---

**2.** Communications Officers Camille Rodríguez Baez and Zonia Lobera Rodríguez are no longer plaintiffs in this case. (*See* Docket No. 91.)

between the President and the press, and handling confidential information. Plaintiffs Debra Feliciano, Ketzy Melecio Alamo, and Wendy Rodríguez Román held the position of Public Information Communication Officers within the PIO. The responsibilities of Communication Officers included planning and developing PIO activities, providing advising on appropriate public policy in matters concerning the press and Senate President, and participating in the correction of press releases and written information generated by the PIO. Political affiliation was an acceptable criteria for the PIO Communication Officer position because this position implicates a close relationship with the President of the Senate and a genuine capacity to influence the resolution of partisan matters through generating or diminishing public support through the press.

 As part of the Office of Public Policy and Legislation ("OPL"), the Programmatic Analysis Office works on production and promotion of legislation initiated by the President, produces legislation proposals, identifies legislative solutions to problems and evaluates their impact on public policy. Plaintiff María Alvarez Villafañe was employed in the OPL as a Programmatic Analysis Assistant. Her duties included providing direction and coordination on the output of Senate bills and resolutions, representing her supervisor or concentration area in conferences, meetings, and activities, as well as investigating and processing requests for legislative donations and preparing reports for the President of the Senate. Party membership was an appropriate job requirement for this position because of the position's close connection to the Senate President and the capacity to influence partisan political matters through the production of legislation proposals and legislative problem-solving.

 For the foregoing reasons the Court finds that plaintiffs Nery Yanes Bosch, Carmen Zavala Vázquez, Olga Alicea Cardona, Francisca Meléndez Cátala, Debra Feliciano, Ketzy Melecio Alamo, Wendy Rodríguez Román, and María Alvarez Villafañe occupied positions that had "sufficient policymaking implications to avoid the constitutional proscription against politically motivated discharges." *Galloza*, 389 F.3d at 29. As the Court conducted its analysis, it was mindful that the goal of the two prong test set out in *Galloza* "is not to shackle a new administration in the legitimate pursuit of the policies that led to its electoral success." *Id.* at 30; *see also Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241 (1st Cir.1986). For, " 'an employee is not immune from political firing merely because the employee stands apart from "partisan" politics, or is not the ultimate decision maker in the agency, or is guided in some of his or her functions by professional or technical standards. Rather it is enough that the official be involved in policy, even if only as an adviser, implementer or spokesperson.'" *Id.* (quoting *Flynn v. City of Boston*, 140 F.3d 42 (1st Cir.1998)).

### B. *"Non–Policymaking" Employees*

The Court finds that the following plaintiffs were not employed in positions that were policymaking or confidential in nature, and thus held positions which are afforded constitutional protection from dismissals on the basis of political affiliation: Edwin León Boneta as Administrative Officer I; Isabel Alburquerque and Lucila Martínez Pantoja as Records and Procedures Officers; José Alicea Lugo, José Burgos Escalera, José Castro Lassus as Driver–Messenger; Carmen Bermúdez Colon as Office Systems Administrator II; Luis Candelario Osorio, María Pacheco Navedo, Mayra Reyes Rivera, and Valentina Rivera Meléndez as Office Clerks; Luis

Donato Duque and Lucila Rivera Santana as Maintenance Workers; Ruvva Gómez Ruiz as Proofreader; Yatzka Marcano Irizarry, María Romero Jackson, and Sherrie Vélez Mendez as Tourist Guides; Carlos Rivera McDermott as Usher;[3] Harold Ramos Alamo as Photographer; and Marisol Torres Colon as Accounting Assistant.

 Analyzing the aforementioned plaintiffs' positions and responsibilities under the test set out in *Galloza v. Foy*. *Galloza*, 389 F.3d at 29. These plaintiffs all held positions which were subordinate, did not entail significant supervision or control over other employees, and did not provide any authority to speak in the name of or otherwise significantly represent policymakers or office-holders. These positions did not have influence over programs or policy initiatives, nor could any such influence be reasonably inferred by the public. Many of the positions did involve handling or incidental contact with confidential or politically-sensitive materials (i.e. Messengers delivering documents or maintenance workers disposing trash). Mere incidental exposure to politically sensitive information or materials by nature of an employee's job, does not qualify the worker as a "confidential public employee" that is divested of constitutional protection from politically motivated firing. *Vazquez Rios v. Hernandez Colon*, 819 F.2d 319, 325–26 (1st Cir.1987). Moreover, these positions provided identical services to all senators irrespective of their political party. Hence, there is no indication that affiliation with one party instead of another would be a valid job requirement. In sum, these positions simply did not have any capacity to influence the resolution of matters potentially subject to partisan political difference and thus, political affiliation was not an appropriate criterion for tenure. *See Id.; Galloza*, 389 F.3d 26, 2004 WL 2537341 at *3.

 The First Amendment protects government employees in non-policymaking positions from discrimination based on their political affiliation. *LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir.1996); *see also Vazquez–Valentin v. Santiago–Diaz*, 385 F.3d 23, 30 (1st Cir.2004). Nonpolicymaking government employees who allege political discrimination have a threshold burden to produce evidence sufficient to allow a rational factfinder to find that their political affiliation was a substantial or motivating factor behind the adverse employment action taken against them. *Baez–Cruz v. Municipality of Comerio*, 140 F.3d 24, 28 (1st Cir.1998); *Rodriguez–Rios*, 138 F.3d at 24. Once a plaintiff has met this threshold, the burden shifts to the employer to articulate a nondiscriminatory basis for the adverse employment action and prove by a preponderance of the evidence that it would have been taken without regard to the plaintiff's political affiliation. *LaRou*, 98 F.3d at 661; *Rodriguez–Rios*, 138 F.3d at 24; *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

 The non-policymaking plaintiffs, enumerated above, have met their burden by providing evidence that their dismissals were due to their political affiliation. This evidence includes deposition testimony that indicates that defendants were aware of plaintiffs' political affiliation, that political affiliation was a factor used discharge and hiring decisions, and that new hires have been overwhelmingly from the defendants' political party, the PDP. This evidence is augmented by circumstantial evidence, such as the proximity in time between defendants' appointment and plaintiffs' dismissals. *See Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 238–39 (1st Cir.1986). Triable issues

---

3. Usher Jorge Pérez García is no longer a plaintiff in this case. (*See* Docket No. 91.)

of fact remain as to whether the non-policymaking plaintiffs were discharged on the basis of their political affiliation; and if political affiliation was a substantial or motivating factor, whether a legitimate non-discriminatory basis for these dismissals existed.

### III. Due Process

■■■■■ To establish a procedural due process claim, a plaintiff must show that he held a property interest as defined by state law and that defendants, acting under color of state law, deprived him of his property interest without constitutionally adequate process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct., 1148, 1154, 71 L.Ed.2d 265 (1982); *Mimiya Hosp., Inc. v. U.S. Dept. of Health & Human Servs.*, 331 F.3d 178, 181 (1st Cir. 2003). In order to establish a constitutionally protected property interest, plaintiff must "demonstrate that [s/he] has a legally recognized expectation that [s/he] will retain her position . . . ." *Santana v. Calderon*, 342 F.3d 18, 24 (1st Cir.2003). "Under Puerto Rico law, career employees have a property interest in their continued employment." *Gonzalez–De–Blasini v. Family Dept.*, 377 F.3d 81, 86 (1st Cir.2004).

■■■■ In their amended motion for summary judgment, defendants argue that plaintiffs were not entitled to due process because they lacked a constitutionally protected property interest in continued employment because they were all at-will employees (Docket No. 42 at 37–38). It is settled that "an at-will employee lacks a reasonable expectation of continued employment, and, thus, has no property interest in her job" *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 111 (1st Cir.2003) (internal punctuation omitted) (citing *King v. Town of Hanover*, 116

F.3d 965, 969 (1st Cir.1997)). Moreover, "transitory employees generally do not have a property interest in continued employment beyond their yearly terms of appointment." *King v. Town of Hanover*, 116 F.3d 965, 969 (1st Cir.1997).

■■■■■ The following plaintiffs were transitory employees (*see* Amended Complaint, Docket No. 20): Isabel Alburquerque, José Alicea Lugo, Carmen Bermúdez Colon, José Burgos Escalera, Luis Candelario Osorio, José Castro Lassus, Luis Donato Duque, Ruvva Gómez Ruiz, Yatzka Marcano Irizarry, Lucila Martínez Pantoja, María Pacheco Navedo, Mayra Reyes Rivera, Carlos Rivera McDermott, Lucila Rivera Santana, María Romero Jackson, Sherrie Vélez Mendez, Nery Yanes Bosch, and Carmen Zavala Vazquez. As these plaintiffs were transitory employees, they lacked a property interest in their employment and thus, were not entitled to due process. Therefore, defendants' amended motion for summary judgment on the grounds that plaintiffs were not entitled to due process in their dismissals is granted as to these plaintiffs. This determination does not alter the Court's First Amendment analysis. "[T]he fact that a transitory employee does not have a reasonable expectation of renewal in his or her employment . . . does not defeat a First Amendment claim." *Gomez v. Rivera Rodriguez*, 344 F.3d 103 (1st Cir.2003) (quoting *Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92, 98 (1st Cir. 1997)). Accordingly, although these plaintiffs' due process claims are dismissed, their First Amendment claims remain.

■■■■ As discussed above, the following plaintiffs' positions were ones for which political affiliation is a valid criteria:[4] Olga

---

4. Political affiliation was also a valid criteria for employment of transitory employees Nery

Yanes Bosch and Carmen Zavala Vázquez.

Alicea Cardona, Francisca Meléndez Cátala, Debra Feliciano, Ketzy Melecio Alamo, Wendy Rodríguez Román, and María Alvarez Villafañe. As political affiliation was a valid criteria for tenure, these plaintiffs had no legitimate expectation of continued employment, and thus, were not entitled to due process. *See Galloza,* 389 F.3d at 33–34. Therefore, defendants' motion for summary judgment on the grounds that plaintiffs were not entitled to due process in their dismissals is granted as to these plaintiffs.

Regarding the remaining plaintiffs: Edwin León Boneta, Harold Ramos Alamo, Marisol Torres Colon, and Valentina Rivera Meléndez, triable issues of fact remain about whether these plaintiffs were career employees and thus entitled to due process. Therefore, summary judgment on the grounds that plaintiffs were not entitled to due process is denied as to these plaintiffs.

In summary, defendants' petition for summary judgment is granted in part and plaintiffs' due process claims are dismissed for all plaintiffs *except* Edwin León Boneta, Harold Ramos Alamo, Marisol Torres Colon, and Valentina Rivera Meléndez.

### IV. Immunity
### A. Qualified Immunity

In determining whether the defendants are entitled to qualified immunity, the threshold question the Court must ask is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). If the facts alleged show that the officer's conduct violated a constitutional right, the Court must ask whether "the contours of this right are 'clearly established' under then-existing law so that a reasonable officer would have known that his conduct was unlawful." *Santana v. Calderon,* 342 F.3d 18, 23 (1st

Cir.2003) (citing *Dwan v. City of Boston,* 329 F.3d 275, 278 (1st Cir.2003)). If both inquires are answered in the affirmative, a defendant will not be afforded qualified immunity.

As discussed above, dismissals of employees that held position for which political affiliation was a valid criteria do not implicate violations of due process or the First Amendment. *See Galloza v. Foy,* 2004 WL 2537341 at 28, 33–34 (1st Cir. 2004). Hence, the plaintiffs that held such positions have not demonstrated violation of a constitutional right. Thus, defendants are entitled to qualified immunity as to the following plaintiffs: Nery Yanes Bosch, Carmen Zavala Vázquez, Olga Alicea Cardona, Francisca Meléndez Cátala, Debra Feliciano, Ketzy Melecio Alamo, Wendy Rodríguez Román, and María Alvarez Villafañe.

Triable issues of fact remain as to whether defendants violated the First Amendment rights of the following plaintiffs: Isabel Alburquerque, José Alicea Lugo, Carmen Bermúdez Colon, José Burgos Escalera, Luis Candelario Osorio, José Castro Lassus, Luis Donato Duque, Ruvva Gómez Ruiz, Yatzka Marcano Irizarry, Lucila Martínez Pantoja, María Pacheco Navedo, Mayra Reyes Rivera, Carlos Rivera McDermott, Lucila Rivera Santana, María Romero Jackson, and Sherrie Vélez Mendez. Additionally, triable issues of fact remain as to whether defendants violated plaintiffs Edwin León Boneta, Harold Ramos Alamo, Marisol Torres Colon, and Valentina Rivera Meléndez's First Amendment *and* due process rights. Thus, it would be premature at this time for the Court to find that defendants are entitled to the protection of qualified immunity as to these plaintiffs.

### B. Legislative Immunity

Legislative immunity attaches to functions that are "significantly related to

legislating." *Agromayor v. Colberg,* 738 F.2d 55, 59 (1st Cir.1984). In determining whether legislative immunity applies, "the test has been stated as whether the challenged activities were 'an integral part of the deliberative and communicative processes'" *Id.* (citing *Gravel v. United States,* 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972)). Although not all employment decisions raise a legislative interest, the hiring or firing of an employee whose position has "meaningful input with regard to the legislative function" is of direct legislative importance and may implicate legislative immunity. *Id.* at 60.

Consistent with the Magistrate's Report and Recommendation (Docket No. 73) the Court finds that the plaintiffs that held positions for which political discrimination was an appropriate criterion also occupied positions which required meaningful input into the legislative function and dealt with the deliberative and communicative processes of legislation to the extent that legislative immunity should be granted. Therefore, defendants petition for summary judgment under legislative immunity is *granted* as to these plaintiffs: Nery Yanes Bosch, Carmen Zavala Vázquez, Olga Alicea Cardona, Francisca Meléndez Cátala, Debra Feliciano, Ketzy Melecio Alamo, Wendy Rodríguez Román, and María Alvarez Villafañe.

The remaining plaintiffs did not occupy positions that were policy-making or confidential in nature, and did not have meaningful input into the legislative process. Therefore defendants petition for summary judgment under legislative immunity is *denied* as to the remaining plaintiffs: Isabel Alburquerque, José Alicea Lugo, Carmen Bermúdez Colon, José Burgos Escalera, Luis Candelario Osorio, José Castro Lassus, Luis Donato Duque, Ruvva Gómez Ruiz, Yatzka Marcano Irizarry, Lucila Martínez Pantoja, María Pacheco Na-

vedo, Mayra Reyes Rivera, Carlos Rivera McDermott, Lucila Rivera Santana, María Romero Jackson, Sherrie Vélez Mendez, Edwin León Boneta, Harold Ramos Alamo, Marisol Torres Colon, and Valentina Rivera Meléndez.

### CONCLUSION

In view of the aforementioned, the Court **ADOPTS in part** the Magistrate Judge's Report and Recommendation (Docket No. 73). The Court therefore **GRANTS in part and DENIES in part** defendants' amended motion for summary judgment (Docket No. 42).

The following plaintiffs' claims are dismissed in their entirety:

1. Nery Yanes Bosch
2. Carmen Zavala Vázquez
3. Olga Alicea Cardona
4. Francisca Meléndez Cátala
5. Debra Feliciano
6. Ketzy Melecio Alamo
7. Wendy Rodríguez Román
8. María Alvarez Villafañe.

The following plaintiffs' due process claims are dismissed but First Amendment claims remain:

1. Isabel Alburquerque
2. José Alicea Lugo
3. Carmen Bermúdez Colon
4. José Burgos Escalera
5. Luis Candelario Osorio
6. José Castro Lassus
7. Luis Donato Duque
8. Ruvva Gómez Ruiz
9. Yatzka Marcano Irizarry
10. Lucila Martínez Pantoja
11. María Pacheco Navedo
12. Mayra Reyes Rivera
13. Carlos Rivera McDermott

14. Lucila Rivera Santana
15. María Romero Jackson
16. Sherrie Vélez Mendez.

The following plaintiffs' due process *and* First Amendment claims remain:

1. Edwin León Boneta
2. Harold Ramos Alamo
3. Marisol Torres Colon
4. Valentina Rivera Meléndez

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

VELEZ–RIVE, United States Magistrate Judge.

### INTRODUCTION

In the year 2000, after general elections were held, the Popular Democratic Party ("PDP") won over the presiding opposing New Progressive Party ("NPP") and gained a majority in both Houses of the Legislative Branch in the Commonwealth of Puerto Rico. Defendant, Hon. Antonio Fas Alzamora, was elected President of the Senate on January 8, 2001. Until the new elected President took charge, the Acting President Luis D. Pastrana Román, ordered on January 2, 2001, the renewal for six (6) months of all transitory employees' contracts that had expired on December 31, 2000. On that same month, when co-defendant Fas Alzamaroa took office, the six-month renewals were reversed and extended solely until January 31, 2001.

Thereafter, a reorganization of the various Senate offices was implemented with the creation of new offices, as well as a classification plan for administrative employees that entailed a description of duties and a uniform pay scale. Plaintiffs

had occupied positions which were considered of free selection and removal. The new Senate administration did not adopt the personnel regulation applicable to employees of the Puerto Rico Senate which had been in effect during the presidencies of the two prior Senate Presidents since 1982, namely, Honorable Roberto Rexach Benítez and Honorable Charlie Rodríguez.

Plaintiffs filed the present action for money damages and injunctive relief, among others, claiming political discrimination in their employment which caused violations to their federal constitutional rights, as well as under state law.[1] In essence, it is alleged the changes implemented by the Senate in the year 2001 caused numerous employees, plaintiffs herein, to suffer adverse employment actions because their positions were eliminated and/or they were removed for alleged lack of requirements to the positions they had been holding, among other reasons.

Defendants filed an Amended Motion for Summary Judgment (Docket No. 42)[2] claiming these actions were not politically motivated and relying on the inherent power of each Legislative Assembly to regulate its internal business and affairs which has state constitutional protection, as well as state law support. *See* Article III § 9 of the Commonwealth of Puerto Rico Constitution. As such, defendants argue plaintiffs have no due process entitlement for lacking any expectation of right to their employment and/or property right. Defendants have also raised in their petition for summary judgment they enjoy legislative and/or qualified immunity in their employment decisions as to plaintiffs. As to this matter, defendants submit

---

1. Claims were filed under the First, Fifth and Fourteenth Amendment of the U.S. Constitution; 42 U.S.C. § 1983 and § 1988, and under Sections 1,4, 6, 7 of Art. II of the Commonwealth of Puerto Rico Constitution, as well as under pendent state law jurisdiction.

2. The Amended Motion for Summary Judgment substituted defendants' previous request for summary judgment (Docket No. 40).

the positions occupied by many plaintiffs were ones of confidence for which political loyalty is an appropriate job criteria and/or involve decision-making issues where political agreement on goals and implementation would be required, and as such, defendants are entitled to legislative and/or qualified immunity.

Plaintiffs submitted their Response to Amended Motion for Summary Judgment (Docket No. 52). Thereafter, defendants submitted a reply and plaintiffs requested leave to submit a response, which was thereafter filed, in addition to a sur-reply (Docket No. 64, 65, 72).

The Amended Motion for Summary Judgment and all related pleadings were referred to this Magistrate Judge for report and recommendation. (Docket No. 66).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 894 (1st Cir.1988); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if, based on the substantive law at issue, it might affect the outcome of a case. A material issue is "genuine" if there is sufficient evidence to permit a reasonable

trier of fact to resolve the issue in the non-moving party's favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## BACKGROUND

As discussed in detail below, plaintiffs in this case were not entitled to due process because they lacked a constitutionally protected property right in their employment since there is no genuine controversy of fact that plaintiffs were not tenured, career or regular employees but rather transitory and/or fixed-term contract employees.

Nonetheless, the fact plaintiffs' due process claims should be dismissed does not hinder their First Amendment claim to prevail summary disposition under *Elrod v. Burns*[3] and *Branti v. Finkel.*[4] *See* defendants' Statement of Uncontested Facts, p. 27.

There is ample jurisprudence as to political discrimination cases in this district after the various waves of government employees' dismissals generated in the 1980s and early 1990s, where the contours of discharge because of party affiliation resulted in the Court of Appeals for the First Circuit delineating the applicable law when First Amendment rights were involved. Looking to the inherent duties of a position, it is to be determined then whether defendants' employment actions were predicated on a reasonable believe that the positions at issue are ones which potentially concern matters of partisan political interest and involve at least a modicum policymaking responsibility, access to confidential information, or to official communication. *Figueroa Rodríguez v. López Rivera*, 878 F.2d 1478, 1480 (1st Cir.1989)

---

**3.** *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

**4.** *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (*dismissing* of a public employee based solely on political allegiance violates the First Amendment).

(*granting* qualified immunity in light of responsibilities inherent to the positions).

Because of the concentrical examination of the relation as to the positions occupied by plaintiffs and their functions, which analysis may be dispositive of the defenses raised by defendants as to legislative immunity and/or necessary political affiliation and/or qualified immunity, it is appropriate to discuss in particular each of plaintiffs' functions and duties within the various dependencies of the Legislative Branch, insofar as their trust requirement and their in-depth involvement in the legislative process.

### UNCONTESTED FACTS

The Senate dependencies, which include plaintiffs' positions and duties, as would be applicable to summary judgment, are not in controversy and they are the following:

### A. Office of the Sergeant of Arms.

**Function:** providing and guaranteeing safety and order within the Senate and its members, its facilities and premises; administering the postal office, including official correspondence; serving processes of orders; enforcing those functions even if requiring use of force upon orders given by the President or by the Senate body; arranging and implementing possession and carrying of firearms by members of the Senate and personnel; attending the nutritional and personal needs of legislators; controlling and designating session rooms for public hearings; allowing and accommodating the public during the process of public hearings or Senate floor discussions.

**Positions held by plaintiffs:**

Carlos Rivera McDermott—Usher (Duties: maintaining order and supply materials and equipment for sessions and hearings; interacting with legislators during hearings; attending the public; disposing of drafts, personal notes and comments of legislators produced in hearings as part of the legislative process. Works under the direct supervision of a functionary of higher hierarchy who issues detailed instructions to the usher).

Edwin León Boneta—Administrative Officer I (Duties: studying and applying regulations, norms and procedures to administrative process; orientation to citizens, maintaining communication with government and private entities regarding petitions to the Senate; drafting correspondence and reports; working under the general supervision of the Sergeant of Arms).

José Alicea Lugo—Driver/Messenger (Duties: picking up correspondence and documents; taking it to the senators and others being privy to conversations and information).

José Castro Lassus—Messenger (Duties: picking up correspondence, documents and messages; obtaining signatures on confidential forms and information being delivered).

*See* defendants' Motion for Summ. Judg. pp. 39–42; Statement of Uncontested Facts items 20 and 40 c, e, i, y.

### B. Office of Protocol and Activities.

**Function:** representing the Senate and its President in the organization and promotion of activities; coordinating of same with other branches of government; planning and coordinating visits of high ranking officers of the government; planning activities and formal affairs of the President of the Senate with foreign representatives or other government branches; coordinating transportation, lodging and other personal needs of foreign officers invited by the Senate; selecting and presenting gifts offered; coordinating protocol activities; acting within delegated authori-

ty of the President of the Senate; implementing the public policy.

**Positions held by plaintiffs:**

Nery Yanes Bosch—Sub–Director (Duties: coordinating above activities, drafting of press releases, bulletins, brochures, and documents to communicate with the public as to policies of the Senate).

Carmen Zavala Vázquez—Protocol and Activities Officer (Duties: coordinating activities promoted by the Senate consonant with above functions; serving as host or usher or guest; participating in development work plans related with dissemination and advisement of Senate duties; relating with government and private entities for the planing and execution of activities).

See defendants' Motion for Summ. Judg. pp. 42–45; Statement of Uncontested Facts, items 20 and 40 w, x.

### C. Tourism Office.

**Function:** providing services and attention to individuals and groups to provide orientation as to historical process of the Capitol Building, a historic monument; coordinating activities with other organization related to tourism; preparing and printing relevant audiovisual and printed material for tours within the historic building; preparing and keeping the registry of visitors; offering educational activities.

**Positions held by plaintiffs:**

María A. Romero Jackson, Sherrie Lee Vélez Méndez and Yatzka Marcano Irizarry—Tourist Guides (Duties: planning the historical tours within the Capitol Building

and interacting with the public who comes daily to see the facilities).

See defendants' Motion for Summ. Judg. pp. 45–47; Statement of Uncontested Facts items 12 and 40 s, t, u.

### D. Maintenance Office.

**Function:** providing maintenance services to the physical facilities of the Senate, including the senators personal offices and the offices of the President of the Senate.[5]

**Positions held by plaintiffs:**

Lucila Rivera Santana and Luis Donato Duque—Maintenance Workers (Duties: maintenance).

See defendants' Motion for Summ. Judg. pp. 47–48; Statement of Uncontested Facts item 21 and 40 p, q.

### E. Interagency Liaison Office.

**Function:** maintaining effective communication between legislators and their constituents; attending to constituents' needs.[6]

**Positions held by plaintiffs:**

Olga Alicea Cardona and Francisca Meléndez Cátala—Interagency Liaison Officers (Duties: addressing and channeling applications and request by citizens to the Senate; maintaining list of personal resources; visiting other agencies to coordinate services).

José E. Burgos Escalera—Driver/Messenger (Duties: picking and distributing documents and correspondence in and out of the Capitol Building; transporting offi-

---

**5.** Defendants claim maintenance workers would come in contact with the legislators' documents, equipment, desk and spaces where information may be stored.

**6.** Defendants claim this office is the face of the Senate and its leadership before the citi-

zens, having direct input with the suggesting and coordination of legislative initiatives; making recommendations for law bills, resolutions, and other legislative measures while receiving input from citizens and the community on the desirability and/or opposition to pending legislation.

cials and preparing reports as to their trips).

Luis Candelario Osorio—Office Clerk (Duties: processing of documents and forms; maintaining registries and control logs on office matters; preparing and drafting routine administrative reports; organizing forms and documents; maintenance of all files assigned to the work area as to legislation).

See defendants' Motion for Summ. Judg. pp. 48–50; Statement of Uncontested Facts items 11 and 40 d, m, n.

### F. Public Information Office.

**Function:** divulging information on the legislative process; preparing press releases and conferences of the President; handling confidential information; maintaining and promoting good relationship between the President and the press.

**Positions held by plaintiffs:**

Debra Feliciano, Ketzy Melecio Alamo and Wendy Rodríguez Román—Public Information Officers [7] (Duties: planning and developing of activities; participating in correction of press releases and written information generated in said office; and advising as to appropriate public policy in relation to the press and the President of the Senate).

Harold Ramos—Photographer (Duties: taking and developing of photographs in different activities carried out by the Senate. Works under the direct supervision of a functionary of higher hierarchy who issues detailed instructions to the photographer. The photographer's work is reviewed while being performed and upon finishing same).

See defendants' Motion for Summ. Judg. pp. 50–52; Statement of Uncontested Facts items 9 and 40 f, g, h. r.

7. In addition, plaintiff Zonia Lobera Rodríguez was also a Public Information Officer.

### G. Office of the Secretary of the Senate.

**Function:** principal office responsible for the functioning of the Puerto Rico legislative system; acting as secretary of the caucus of the majority party and his office; providing necessary materials to be used during legislative sessions; managing and conserving historical legislative process; maintaining relationship between the bicameral legislative system which exists in the Commonwealth of Puerto Rico.

**Position held by plaintiff:**

Carmen Bermúdez Colón—Office Systems Administrator II (Duties: secretarial work, using computer systems, transcribing and taking dictations, drafting communications for the supervisor's signature; handling of confidential documents and files in her work area).

See defendants' Motion for Summ. Judg. pp. 52–54; Statement of Uncontested Facts items 18 and 40 aa.

### H. Records and Procedures Office.

**Function:** working within the wing of the Office of the Secretary of the Senate keeps track and recording of live transmissions of the legislative sessions; maintaining day to day books on each legislative measure and including in the system all legislative proceedings on proposed legislative measures; referring to the Rules and Calendar Commission all measures culminating a legislative process which are ready for consideration by the Senate Ordinary Session.

**Positions held by plaintiffs:**

Isabel Alburquerque Hernández and Lucila Martínez Pantoja—Records and Procedures Officers (Duties: processing and filing of assorted documents; forwarding

Nonetheless, her name was not submitted as part of the statement of uncontested facts.

bills to Senate Commissions; operating electronic equipment to update information on Senate projects; drafting and translation of calendars in the English language and distribution thereof and the dissemination of this information to the public).

See defendants' Motion for Summ. Judg. pp. 54–56; Statement of Uncontested Facts items 15 and 40 a, b.

### I. Documents Administration and Archives Office.

**Function:** dealing with active and inactive archives; serving as a connection between the Records and Procedures Office and the Legislative Sessions Diary Office; keeping custody of legislative materials; providing each legislators with all documents necessary for the legislative discussion; custodian of the legislative archives and distribution of information therein to third parties.

**Positions held by plaintiffs:**

María Pacheco Navedo and Mayra Reyes Rivera—Office Clerks (Duties: processing documents and forms; maintaining registers and control logs; reviewing and organizing forms and documents for the signature and/or certification of higher ranking officers; maintaining all files assigned to the work area).

See defendants' Motion for Summ. Judg. pp. 56–57; Statement of Uncontested Facts items 17 and 40 v, z.

### J. Legislative Sessions Diary Office.

**Functions:** preserving the records of all legislative proceedings; transcribing and correcting all legislative process, including drafts, prior to promulgation as a public document; providing the version submitted by the House for specific legislative measures for acceptance of the Senate; advising that materials provided are in conformity with the legislative debate.

**Position held by plaintiff:**

Ruvva Gómez Ruiz—Proofreader (Duties: arranging transcripts from hearings and sessions and carrying out grammar and style corrections; verifying information transcribed with the audio tapes).

See defendants' Motion for Summ. Judg. pp. 57–58; Statement of Uncontested Facts items 16 and 40 j.

### K. Finance Office.

**Function:** management of disbursements, deposit and control of public funds assigned to the legislative body; pre-auditing daily expenses payments to legislators and invoices for professional services and phone bills.

**Positions held by plaintiffs:**

Marisol Torres Colón—Accounting Assistant (Duties: pre-intervening with disbursement vouchers, travel expenses; preparing reports on fiscal transactions in her work area; preparing voucher records, per diem payments and other activities on her work area).

Valentina Rivera Meléndez—Office Clerk (Duties: maintaining and updating registers and controls logs on office related matters; preparing simple or routine administrative reports on assorted matters; organizing forms and documents for certification and/or signature of higher ranking officers; maintaining all files assigned to her work area).

See defendants' Motion for Summ. Judg. pp. 58–59; Statement of Uncontested Facts items 23 and 40 k, l.

### L. Programmatic Analysis Office.

**Function:** as part of the Office of Public Policy and Legislation works on production and promotion of legislation initiated by the President; ascertains that the legislative agenda is concluded by the four-year term of the existing Legislative Assembly; produces legislation proposals; identifies

legislative solutions to problems and evaluates their impact on public policy and on the figure of the President of the Senate.

**Position held by plaintiff:**

María T. Alvarez Villafañe—Programmatic Analysis Assistant (Duties: direction and coordination on the output of bills and resolutions; attending conference, meetings and activities representing her supervisor or responsibilities within her work area).

See defendants' Motion for Summ. Judg. pp. 59; Statement of Uncontested Facts items 13 and 40 bb.

## ANALYSIS

### I. Due Process Claim—Plaintiffs' Property Rights.

To establish a procedural due process claim plaintiffs must show they held a property interest as defined by state law and the defendants, acting under color of state law, deprived them of their property interest without constitutionally adequate process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Mimiya Hosp., Inc. v. U.S. Dept. of Health and Human Servs.*, 331 F.3d 178, 181 (1st Cir.2003) (*stating* as being well established that individuals whose property interests are at stake are entitled to notice and an opportunity to be heard) (*quoting* from *Dusenbery v. United States*, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002)).

It is undisputed plaintiffs in this action were mostly transitory, subject to six-month contract renewals, and the Puerto Rico Senate holding office at the time had not adopted the personnel regulations that would foster any claim of entitlement to continuous employment. As such, plaintiffs held no property interest and thus hold no due process protection in their employment. *Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92, 94 (1st Cir.1997) (*explaining* that transitory employees generally do not have a property interest in continued employment beyond their terms of appointment). *See Gómez v. Rivera Rodríguez*, 344 F.3d 103 (1st Cir.2003); *Caro v. Aponte–Roque*, 878 F.2d 1, 4 (1st Cir.1989).

Therefore, it is recommended that of all plaintiffs' due process claims be dismissed and as such, defendants' request for summary disposition on this issue be GRANTED.

### II. Legislative Immunity.

The Speech and Debate Clause contained in Article I, § 6 of the Constitution of the United States immunizes members of the United States Congress and their aides in suits for damages and prospective relief.[8]

As held in *Agromayor v. Colberg*, 738 F.2d 55 (1st Cir.1984), this legislative immunity is based on the need "for an independent legislative branch, free from the coercion or restraint imposed by inquiry from other governmental authority, as well as from the time-consuming problem of legislators having to defend their official acts in court."[9] In addition, this clause

---

**8.** The U.S. Constitution, Art. I, Section 6, cl. 1, prays "They [The Senators and Representatives], shall in all cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning form the same; and for any Speech or Debate in either House, they shall not be questioned in any other place". *See Eastland v. United States Service-*

*men's Fund*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975).

**9.** *See Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Romero–Barceló v. Hernández–Agosto*, 75 F.3d 23 (1st Cir.1996); *Hernández–Agosto v. Romero–Barceló*, 748 F.2d 1 (1st Cir.1984); *Colón Berríos v. Hernández Agosto*, 716 F.2d 85 (1st Cir. 1983).

has not been limited to speech or debate, as protected by Article I, § 6, but applied to protect members in "all things generally done in a Session in the House by one of its members in relation to the business before it." *See Kilbourn v. Thompson*, 103 U.S. 168, 13 Otto 168; 26 L.Ed. 377 (1880).

Even when Article I, § 6 applies only to Congressional members, the United States Supreme Court has accorded state and local legislators similar absolute immunity, both to suits for money damages and equitable remedies under § 1983.[10] Therefore, state legislators enjoy common-law immunity from liability for their legislative acts, an immunity that is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause. *See, Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). In *Tenney*, the court held Congress did not intend § 1983 to abrogate the common-law immunity of state legislators. Although *Tenney* involved an action for damages under § 1983, its holding is equally applicable to § 1983 actions seeking declaratory or injunctive relief. *See Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. at 719, 100 S.Ct. 1967; *Eastland*, 421 U.S. at 491, 95 S.Ct. 1813.

Nevertheless, it must be emphasized absolute immunity exists for legislative tasks. However, legislators do not have absolute immunity for their non legislative functions. For absolute immunity to exist the activity "must be an integral part of the deliberative and communicative processes by which members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either house". *See Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972).

In addition, the Supreme Court has strongly emphasized that "[t]he immunities of the Speech or Debate Clause are not written into the Constitution simply for the personal benefit of Members of Congress, but to protect the integrity of the legislative process by insuring the independence of individual legislators". *See United States v. Brewster*, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). Thus, claims under said clause going beyond what is needed to protect legislative independence are to be closely scrutinized.

There is a split in lower court authorities as to whether the hiring and firing of legislative personnel should be considered a legislative task for which absolute immunity exists.[11] The issue of who is entitled to absolute legislative immunity also exists.

As to the hiring and firing of legislative personnel, the focus in applying absolute immunity to legislators is on the **function** performed by the employee rather than by the **title** he or she possessed [emphasis added]. In *Agromayor*, 738 F.2d at 55, the First Circuit held that "not all employment raises a legislative interest."

10. *See Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) in which the United States Supreme Court equated immunity of state and local legislators with that accorded to member of Congress under the Speech and Debate Clause.

11. *Compare Davis v. Passman*, 544 F.2d 865 (5th Cir.1977) *cert. granted*, revs. on other grounds 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)(denying legislative immunity); *Chateaubriand v. Gaspard*, 97 F.3d 1218 (9th Cir.1996); *Carver v. Foerster*, 102 F.3d 96 (3rd Cir.1996) (denying legislative immunity) *with Carlos v. Santos*, 123 F.3d 61 (2nd Cir. 1997); *Agromayor v. Colberg, supra* (according legislative immunity).

As the First Circuit admonished in *Agromayor* "in applying the immunity we decline to inquire deeply into the functions performed by a particular personal legislative aide, inasmuch as such inquiry itself threatens to undermine the principles that absolute immunity was intended to protect. Personal aides may perform a variety of tasks, only some of which are vital to the legislative process."

Therefore, the "test" ' to decide whether employment's decisions by legislative authority are immune from judicial scrutiny is whether the duties performed by the employee, either provide "enough opportunity for 'meaningful input' into the legislative process", *Agromayor*, 738 F.2d at 60, or are part of the due functioning of the legislative process, *Browning v. Clerk, U.S. House of Representatives*, 789 F.2d 923 (D.C.Cir.1986).

 Under Puerto Rico law, the employees of the Puerto Rico Legislative Assembly may be dismissed at the will of the Speaker. Art. III § 9 of the Constitution of the Commonwealth of Puerto Rico, allows the Legislative Assembly to adopt its own rules for the hiring of legislative employees. Furthermore, Rule VII of the House of Representatives of the Legislative Assembly of Puerto Rico states that "[t]he permanent employees of the House of Representative will be designated by the Speaker and will exercise their duties during the Legislative Assembly's term or duration. The Speaker may, at any time, declare expired the term for which any employee was appointed, when in his/her judgment it is necessary and convenient for the service and shall appoint the corre-

sponding successor". However, this conclusion—which seems that Puerto Rico law does not give legislative employees a property right in their continued employment—does not change the fact that the Speaker's employment decisions are also restricted by other constitutional provisions. Therefore, an employment decision of the Speaker cannot violate other constitutional rights.

As an example, in *Soler García v. Hernández Torres*, 1996 WL 588915, (D.Puerto Rico 1996), the court denied a defendant's motion for summary judgement based on legislative immunity. Plaintiff was therein employed by the Legislative Service Office of the Commonwealth of Puerto Rico as a purchaser in the Legislative Library. As a result of the November 1992 general elections, representatives and senators affiliated with the NPP gained control of both chambers in the Legislature and dismissed plaintiff, allegedly because of his political affiliation with the PDP.[12] As in this case, defendants therein argued *Agromayor*'s employment decision should be considered as an activity within the "legitimate legislative sphere" and therefore protected by legislative immunity.

However, the court said *Agromayor*'s decision was distinguishable from *Soler's* decision. The court concluded that "there is a significant difference between the involvement of the House minority leaders' press officer and the duties of a book purchaser." While describing plaintiff's roles, the court emphasized:

Soler was a purchaser of books, not a librarian. He was allowed little or no

---

12. As part of its analysis, the court discussed *Negrón–Gaztambide v. Hernández–Torres*, 35 F.3d 25 (1st Cir.1994). In this case a librarian affiliated with the PDP had also been dismissed. The Court of Appeals reversed the dismissal granted by the district court to defendants' (on the grounds that defendants' were shielded by absolute immunity) holding that "defendant's decision to replace Negrón (a member of the PDP) with a NPP activist was an administrative decision rather than a action shielded by absolute legislative immunity".

discretion in the performance of his duties, which were essentially limited to clerical duties ... From the description submitted by the defendants of Soler's duties, "he does not appear to have been privy to confidential information or to otherwise have had any meaningful input into the legislative process". *Soler Garcia*, 1996 WL 588915.

In addition, the court concluded defendants in *Soler's* case "have a lesser degree of discretion than the defendant in *Agromayor* case because that involved a discharge, not a refusal to hire." Furthermore, the Court of Appeals drew a substantial distinction between discharge from employment and original selection. Accordingly, the court's inquiry into the functions performed by a non-personal aide may be greater. Because of the above discussed, the court denied defendant's motions for summary judgment based on legislative immunity as those acts were not shielded by legislative immunity.

In *Acevedo–Garcia v. Vera–Monroig*, 204 F.3d 1 (1st Cir.2000), the Major, elected as a PDP candidate, inherited a large number of municipal employees of the opposite NPP party. He hired a private consultant firm to evaluate the personnel and create a layoff plan. The Municipal Assembly approved the plan through an ordinance. The plan detailed procedures for the selection and discharge of employees. A process for appealing the decision was also established. The municipality enacted the plan dismissing 102 positions, almost all of them members of the NPP. Pursuant to local law, the elimination of the municipal positions occurs though a legislative act. However, the First Circuit Court of Appeals held the acts of the Mayor and the Director of Human Resources in implementing the ordinance were administrative rather than legislative.

Thus, no absolute immunity protection was granted.

In *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) and in *United States v. Johnson*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), the Supreme Court carefully distinguished between what is only "related to the due functioning of the legislative process and what constitutes the legislative process entitled to immunity under the Clause ..." the Court did not in any sense imply as a corollary that everything 'related' to the office of a Member was shielded by the Clause" ... "In no case has this Court ever treated the Clause as protecting all conducting relating to the legislative process", the court emphasized. Even when employment decisions in the legislative context may be considered activities within the legitimate legislative sphere, therefore, protected by legislative immunity, for those activities to fit into legislative immunity protection defendants have to show that the duties of each dismissed employee were an "integral part of the legislative process."

The application of the above rationale and case law lead to the conclusion the defendants in this case could be entitled to legislative immunity as to some plaintiffs in this case but not as to others. Accordingly, a description of the duties of the employees who were discharged must be analyzed in order to conclude whether:

(A) The particular employee had any **meaningful input** into the legislative process. In this case, because these positions are considered part of the due functioning of the legislative process, legislative immunity should be granted; or

(B) whether the particular employee's duties do not have a meaningful input into the legislative process. That is, if the employees were allowed little or no discretion in the performance of his/her duties,

to wit, those essentially limited to clerical duties, among others. In this case, because these positions are not considered part of the due functioning of the legislative process, legislative immunity should not be granted. While doing this, it becomes necessary to evaluate the function performed rather than the title the employee possessed, as previously indicated.

### III. Qualified Immunity.

Defendants additionally claim they are entitled to qualified immunity because their conduct did not violate clearly established statutory or constitutional rights a reasonable person would have known. It is argued that, in dealing with employees of the Legislative Branch, public officials at the time of their actions could not have reasonably known that under the doctrine of legislative immunity they were not entitled to the employment decisions now being questioned. That is, there being no clearly established law on the issue from which defendants could have considered their actions violated clearly established rights of plaintiffs.

The Supreme Court has recognized qualified immunity embodies "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). *Acevedo–García v. Vera–Monroig,* 351 F.3d 547 (1st Cir.2003).

For a qualified immunity defense, the jobs in question should involve "potentially concerned matters of a partisan political interest and involved at least a modicum of policymaking responsibility, access to confidential information or official communication". *Id.* Defendants invoke in this case a general absolute qualified immunity without particularizing the nature of plaintiffs'

jobs. Furthermore, if the law was clearly established at the time the employment decisions were made, the immunity defense ordinarily should fail. *Harlow v. Fitzgerald,* 457 U.S. 800, 818–819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *See Figueroa–Rodríguez v. López–Rivera,* 878 F.2d 1478 (1st Cir.1989).

### IV. Political Affiliation as Proper Requirement of Employment.

Likewise, plaintiffs' positions should be examined separately *vis a vis* protection against political patronage of one part and on the other part the defendants' claim of entitlement to have these positions held by individuals who are in concert with their political and policy views as elected by their constituents. Whether or not a position is subject to political discharge is a legal question for the courts. *Flynn v. City of Boston,* 140 F.3d 42 (1st Cir.1998).

**A. Plaintiffs Who Performed Functions with a Meaningful Input in the Legislative Process and for Whom Political Affiliation Was a Proper Employment Requirement.**

From the undisputed facts, plaintiffs herein below exercised duties and/or were involved in the legislative process to a degree defendants had a reasonable belief trust and/or party affiliation was necessary to fulfill their employment requirement.

These include the following plaintiffs: Edwin León Boneta as Administrative Officer I; Nery Yanes Bosch as the Sub–Director of the Office of Protocol and Activities; Carmen Zavala Vázquez as the Protocol and Activities Officer; Olga Alicea Cardona and Francisca Meléndez Cátala as Interagency Liaison Officers; Debra Feliciano, Ketzy Melecio Alamo, Wendy Rodríguez Román and Zonia Lobera Rodríguez as Public Information Offi-

cers; and María T. Alvarez Villafañe as Programmatic Analysis Assistant.[13]

Consequently, defendants had grounds for legislative and/or qualified immunity as to above plaintiffs. As such, it is recommended defendants' petition for summary judgment under legislative and/or qualified immunity grounds be GRANTED as to these plaintiffs.

**B. Plaintiffs Who Performed Functions Without a Meaningful Input in the Legislative Process and for Whom Political Affiliation Was Not a Proper Employment Requirement.**

From defendants' own description of the duties, and applying the rationale that these employees held no supervisory authority, were not involved in policy-making activities, the plaintiffs below seem to enjoy protection against political patronage. These plaintiffs did not hold positions from whom political loyalty and/or ideology would be a requisite for their employment.

These include the following plaintiffs: María A. Romero Jackson, Sherrie Lee Vélez Méndez, and Yatzka Marcano Irizarry as Tourist Guides; Lucila Rivera Santana and Luis Donato Duque as Maintenance Workers; Luis Candelario Osorio as Office Clerk; Carmen Bermúdez Colón as Office Systems Administrator II; Isabel Alburquerque and Lucila Martínez Pantojas as Records & Procedures Officers; María Pacheco Navedo, Mayra Reyes Rivera and Valentina Rivera Meléndez as Office Clerks; Ruvva Gómez Ruiz as Proofreader; Marisol Torres as Accounting Assistant; Harold Ramos as photographer; and Carlos Rivera McDermott as Usher.

Nonetheless, defendants have claimed the exposure of these plaintiffs with what they considered could be highly confidential information, even if it involved cleaning or picking up their thrown out papers or having access to general files, entails such trust and loyalty that this court should consider them to be covered by the umbrella of political patronage requirement.

The arguments submitted by defendants are akin with a generalized concept of absolute fulfillment of confidentiality needed by those who occupy positions of intimate propinquity relative to government leaders. This Magistrate Judge is not persuaded by defendants' subjective interpretation of such required absolute mutual trust, loyalty and partisan political affinity from any and all personnel who might occupy the same cubic or virtual space at any contemporary time with a legislator or senator or their papers and documents, who are not the personal aids or assistants.

In *Vázquez Ríos v. Hernández Colón*, 819 F.2d 319 (1st Cir.1987), the Court of Appeals for the First Circuit pondered as to domestic services employees in the Governor's Mansion whose ministerial functions of purely domestic nature did not even potentially concern matters of partisan political interest that could label them confidential public employees and thus were protected against politically motivated discharge. Thus, it ruled that not even the Governor and the Special Aid could reasonably have believed that cleaning women, waiters, and domestic service supervisors were subject to dismissal on basis of political affiliation.

Similarly, from the description of the general duties performed by clerks and office personnel,[14] who are not personal

---

**13.** The work units as to these plaintiffs included the Office of the Sergeant of Arms, the Office of Protocol and Activities, the Interagency Liaison Office, the Public Information Office and the Programmatic Analysis Office.

**14.** A job description is considered the best source to determine whether a particular position falls within the exception of the Elrod–Branti doctrine. *Ortiz–Piñero v. Rivera–Arrovo*, 84 F.3d 7, 13 (1st Cir.1996).

secretaries, assistants or aids of any particular legislator; those who carried out mostly routine office work or exercise duties as documents custodian; and most of them requiring the approval or signature of higher ranking officers, partisan affinity should not be deemed a requisite.

· Thus, clearly as to above plaintiffs,[15] defendants' claim for summary judgment would not be appropriate since plaintiffs still retain protection under First Amendment from dismissal for political patronage. The fact a transitory employee does not have a reasonable expectation of renewal in his or her employment ... does not defeat a First Amendment claim. *Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92, 98 (1st Cir.1997); *accord Cheveras Pacheco v. Rivera Gonzalez*, 809 F.2d 125, 127–129 (1st Cir.1987) (*holding* that transitory employees are entitled to protection under the Elrod/Branti line of cases).

These employees were allowed little or no discretion in the performance of their tasks and their duties were essentially limited to clerical duties. Accordingly, defendants have no grounds for legislative and/or qualified immunity as to above plaintiffs. Hence, it is recommended defendants' petition for summary judgment under legislative and/or qualified immunity grounds be DENIED as to these plaintiffs.[16]

Still, even as to those plaintiffs abovementioned whose cause of action under First Amendment protection would surmount, for summary judgment purposes, being free from employment decisions based on political patronage, an analysis remains as to whether these plaintiffs could meet their burden for their *prima facie* case.

## V. Section 1983 Claim—Lack of Evidence.

Defendants have also argued in their summary judgment motion that plaintiffs Lucila Martínez Pantojas, José Burgos Escalera, Sherri Lee Vélez, Luis Donato Duque, Ruvva Gómez, Debra I. Feliciano Ledey, Wendy Rodríguez Román, Carmen Zavala Vázquez and Carlos Rivera McDermott lack a *prima facie* case for failure to establish proof of their political activism, citing the *Mt. Healthy* [17] prong test and discussing *Padilla–García v. Rodríguez*, 212 F.3d 69 (1st Cir.2000).

Whether all or some of the plaintiffs' lack the necessary evidence to establish that defendants' motivating factor for not renewing their transitory employment contracts was their political affiliation to opposing party is discussed hereinbelow since plaintiffs must meet their burden of causation. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. at 274, 97 S.Ct. 568.

After discussing above the issues of legislative and qualified immunity, it is appropriate to engage in the traditional summary judgment also raised by defendants that plaintiffs have failed to present controverted issues of material fact as to their political discrimination claim.

In claims of political discrimination in employment, non-policy making employees have the burden to produce sufficient efficient, direct or circumstantial, from which a rational jury could find their political

---

15. María A. Romero Jackson, Sherrie Lee Vélez Méndez, Yatzka Marcano Irizarry, Lucila Rivera Santana, Luis Donato Duque, Luis Candelario Osorio, Carmen Bermúdez Colón, Isabel Alburquerque, Lucila Martínez Pantojas, María Pacheco Navedo, Mayra Reyes Rivera, Valentina Rivera Meléndez, Ruvva Gó- mez Ruiz, Marisol Torres; Harold Ramos and Carlos Rivera McDermott.

16. *See* footnote no. 18.

17. 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

affiliation was a substantial or motivating factor behind the adverse employment action in other words, establish causation.[18] *LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir.1996); *Acevedo–Díaz v. Aponte*, 1 F.3d 62, 66 (1st Cir.1993). The employer must then articulate a non-discriminatory basis for the adverse employment action and establish, by a preponderance of the evidence, that it would have taken such action without regard to plaintiffs' political affiliation. *See Mt. Healthy, supra.* The analysis established by *Mt. Healthy* for political discrimination cases passes the burden of persuasion to the defendant-employer once plaintiffs have produced sufficient evidence of a *prima facie* case. In other words, "the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons." *Padilla–García*, 212 F.3d at 77–78. Thus, defendants must persuade the court that their proffered non-discriminatory reason is credible. *Rodríguez–Ríos v. Cordero*, 138 F.3d 22, 26 (1st Cir.1998).

On the one hand, plaintiffs' burden under *Mt. Healthy* does directly to causation. To prevail, they must point to evidence in the record that would "permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically discriminatory animus". *Rivera–Cotto v. Rivera*, 38 F.3d 611, 614 (1st Cir.1994); *Vázquez v. López Rosario*, 134 F.3d 28, 36 (1st Cir.1998). This showing would require more than merely "juxtaposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly". *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 58 (1st Cir.1990). *See Rodríguez–Ríos*

*v. Cordero* (*finding* evidence sufficient when demonstrated that defendants were politically active and were aware of plaintiff's opposing views).

## A. Defendants' Summary Judgment Grounds—Lack of Causation.

Codefendant Fas Alzamora's deposition testimony showed he believed Senate employees left by the former NPP administration lacked the commitment to the new PDP administration's philosophy at the Office of Information, which was deemed an integral part of the legislative process. See Deposition Transcript ("DT") at p. 42. However, there are other functions of the employees which were permanent, such as sweepers, electrician, car washers at the Transportation Department. Id. at p. 69. Still, as the President of the Senate under the new political elected party, Fas Alzamora could not accept that temporary employees of the Senate were protected under the United States or the Commonwealth Constitution. Id. at p. 107. In his personal opinion and experience, all functions of the Senate of Puerto Rico are essential to the legislative process. Id. p. 131.

The above testimony is also to be considered upon co-defendant Fas Alzamora's belief that all positions at the Legislature did not entail regular employees; that they were free to be removed because of their participation in the legislative process, in addition to that prior to non-renewal of their contracts their personnel records were not considered in regard to performance and other employees were appointed after plaintiffs' removal at the Press Office.

Miguel Santiago's deposition testimony also indicated that positions were filled at

---

18. *Padilla–García v. Guillermo Rodríguez,* 212 F.3d 69 (1st Cir.2000) (indicting that once plaintiff satisfies this burden, the devoir of persuasion shifts to the defendants to prove that they would have taken the same action regardless of plaintiff's political affiliation).

the Office of the Sergeant of Arms. See DT p. 57–58.

Although no crystal ball assumption would be appropriate, it is not unreasonably to consider above depositions' testimonies with the timing of defendants' personnel organization and the wave of personnel dismissals or non-renewal of work contracts that shortly follow each general election in Puerto Rico when there is a change in the courses by new government administration and a new political compromise. This district should now be well accustomed to the flood of political discrimination cases, both at municipal and state central government level, following the electoral process in Puerto Rico. *See Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Sánchez López v. Fuentes Pujols,* 375 F.3d 121, 2004 WL 1575060 (1st Cir. 2004). If jointly considered, these may raise a triable issue of fact on whether such conduct could establish politically motivated bias in the defendants' employment decisions.

From the translated exhibits and attachments, there is a controversy of genuine material facts and there are credibility determinations raising from contradictions in the deposition testimonies of defendants' and plaintiffs' versions of events.

### B. Plaintiffs' Opposition—Prima Facie Burden.

Plaintiffs submit evidence in their opposition to establish their political affiliation to the NPP was well known through out the Senate. In the deposition testimony of Sonia Rivera Pérez she indicates how, among other instances,[19] plaintiffs' political affiliation was an issue during a meeting with co-defendant Ariel Nazario Marrero, where Atty. Maria Serbia and one with the

name of Anubis were also present. See DT pp. 69–70. Mrs. Carmen Oneida Santiago testified being acquainted with the political affiliation of persons who worked at the time with the Senate. See DT pp. 17–18. Likewise, the fact plaintiffs were appointed under the previous administration was a presumption of their NPP ideology since, ironically by plaintiffs' admissions, their political party's affiliation was the base for their recruitment. See Debra I. Feliciano Ledey, DT pp. 235, 242; Carmen Zabala Vazquez, Id. p. 200.

A *prima facie* case of political discrimination may be proven by circumstantial evidence. *Kercado–Meléndez v. Aponte–Roque,* 829 F.2d 255, 264 (1st Cir.1987); *Rosaly v. Ignacio,* 593 F.2d 145, 149 (1st Cir.1979). Evidence suggesting defendants' reorganization was a sham [to cover for dismissal of employees] may be considered probative of discriminatory *animus* by the employer in the adverse employment decision. *Nereida–González v. Tirado–Delgado,* 990 F.2d 701, 706 (1st Cir. 1993).

There is controversy as to the evidence that at the Capitol Building everyone knew each other's affiliation. Defendants argued some plaintiffs' lack a *prima facie* case as to some of the plaintiffs, submitting the deposition portions of their testimonies indicating either that they were not politically active while at work under the Presidency of Fas Alzamora, or that they did not know or held conversations with some of the co-defendants, or that no instances of political discrimination actions short of non-renewal of their contracts, could be established. In support of these contentions, defendants raised that plaintiffs Lucila Martínez Pantojas, José Burgos Escalera, Sherri Lee Vélez,

---

**19.** Additionally some of the plaintiffs wore a "Star 51" pin in their lapel while at work, which is clearly identified with the NPP political ideology. See Sherri Lee Vélez Méndez, DT p. 377 and Carlos Rivera McDermott, DT p. 277.

Luis Donato Duque, Ruvva Gómez, Debra I. Feliciano Ledey, Wendy Rodríguez Román, Carmen Zavala Vázquez and Carlos Rivera McDermott could not meet the burden of establishing their *prima facie* case.

The above discussed evidence of record and circumstantial evidence derived from same would not support defendants' claim of summary disposition entitlement since plaintiffs have raised a genuine controversy as to whether their known political affiliation was a motivating factor in the adverse employment actions.

### C. Defendants' Reason for their Personnel Actions.

Defendants have supported their personnel action upon a belief that under legislative immunity they would be entitled to take any and all human resources determinations and reorganized their institution as deemed fit. There was no discussion of personnel policy followed as to plaintiffs' performance, need of services, evaluation, financial constraints, or illegality of their appointments would require further discussion of defendants' defenses or pretextual nature for the decision.

In view of the fact there are genuine issues of fact and credibility determinations as to plaintiffs' known political affiliation, summary judgment is not appropriate as to plaintiffs' lack of a prima facie case. Accordingly, it is recommended defendants' request for summary judgment of the Section 1983 claims for lack of evidence and for failure to establish a prima facie case be DENIED.

### CONCLUSION

In view of the foregoing, it is recommended Defendants' Amended Motion for Summary Judgment be GRANTED in part and DENIED in part. (Docket No. 42).

### A. Due Process Claims.

Plaintiffs were not entitled to due process because they lacked a constitutionally protected property right in their employment since there is no genuine controversy of fact that plaintiffs were not tenured, career or regular employees but rather transitory and/or fixed-term contract employees. Hence, it is recommended that of all plaintiffs' due process claims be dismissed and as such, defendants' request for summary disposition on this issue be GRANTED.

### B. Legislative and/or Qualified Immunity—Plaintiffs Who Performed Functions with a Meaningful Input in the Legislative Process and for Whom Political Affiliation Was a Proper Employment Requirement.

Succinctly, from the undisputed facts,[20] plaintiffs herein below exercised duties and/or were involved in the legislative process to a degree defendants had a reasonable belief that trust and/or party affiliation was necessary to fulfil their employment requirement.

These would include plaintiffs Edwin León Boneta as Administrative Officer I; Nery Yanes Bosch as Sub–Director of the Office of Protocol and Activities; Carmen Zavala Vázquez as Protocol and Activities Officer; Olga Alicea Cardona and Francisca Meléndez Cátala as Interagency Liaison Officers; Debra Feliciano, Ketzy Melecio Alamo, Wendy Rodríguez Román, and Zonia Lobera Rodríguez as Public Informa-

---

**20.** To elucidate issues raised by the parties only translated exhibits on record were considered. *See Gonzalez–De–Blasini v. Family Dept.,* 377 F.3d 81 (1st Cir.2004); *U.S. v.* *Flecha–Maldonado,* 373 F.3d 170, 177 (1st Cir.2004); *Estades–Negroni v. Assoc. Corp. of North America,* 359 F.3d 1 (1st Cir.2004).

tion Officers; and María T. Alvarez Villafañe as Programmatic Analysis Assistant.[21]

Defendants had grounds for legislative and/or qualified immunity as to above plaintiffs. As such, it is recommended defendants' petition for summary judgment under legislative and/or qualified immunity grounds be GRANTED as to these plaintiffs.

### C. Legislative and/or Qualified Immunity—Plaintiffs Who Performed Functions Without a Meaningful Input in the Legislative Process and for Whom Political Affiliation Was Not a Proper Employment Requirement.

In this regards, reference is made to María A. Romero Jackson, Sherrie Lee Vélez Méndez, and Yatzka Marcano Irizarry as Tourist Guides; Lucila Rivera Santana and Luis Donato Duque as Maintenance Workers; Luis Candelario Osorio as Office Clerk; Carmen Bermúdez Colón as Office Systems Administrator II; Isabel Alburquerque and Lucila Martínez Pantojas as Records & Procedures Officers; María Pacheco Navedo, Mayra Reyes Rivera and Valentina Rivera Meléndez as Office Clerks; Ruvva Gómez Ruiz as proofreader; Marisol Torres as Accounting Assistant; Harold Ramos as photographer; and Carlos Rivera McDermott as Usher.[22] These plaintiffs did not hold positions from whom political loyalty and/or ideology would be a requisite for their employment.

These employees were allowed little or no discretion in the performance of their duties and their tasks were essentially limited to clerical duties. Accordingly, defendants had no grounds for legislative and/or qualified immunity as to above plaintiffs. Hence, it is recommended defendants' petition for summary judgment under legislative and/or qualified immunity grounds be DENIED as to these plaintiffs.

### D. Prima Facie Case.

Summary disposition for failure to present a *prima facie* case as submitted by defendants is not appropriate because there are genuine material issues of fact in controversy related to whether the employment decisions were politically motivated. Accordingly, it is recommended defendants' request for summary judgment of the Section 1983 claims for lack of evidence and for failure to establish a prima facie case be DENIED.[23]

### E. Other

Even when previous distinction has been made regarding those employees who held a function with a meaningful input in the legislative process and those who did not, it is necessary to specify that the position of drivers/messengers does not clearly fit into one category or the other and/or there are genuine issues of material fact in controversy that would not warrant summary disposition.[24]

---

**21.** In addition, the Amended Complaint and the roster submitted with defendants' request for admissions positioned plaintiff Camille Rodríguez Baez as a Communication Officer to whom legislative/qualified immunity is to be applicable.

**22.** Defendants have raised no particular issue as to plaintiff Jorge Rivera Pérez, Usher, for which denial of legislative/qualified immunity on grounds above discussed would be applicable.

**23.** As to plaintiffs Lucila Martínez Pantojas, José Burgos Escalera, Luis Donato Duque, Ruvva Gómez, Carlos Rivera McDermott and Sherri Lee Vélez.

**24.** There would also be a controversy of facts since the duties of the positions fail to reflect that any of these drivers were considered chauffeurs or personal drivers of any of the elected officials but rather were part of a pool of drivers who were assigned their daily tasks by supervisors.

## RECOMMENDATION

In view of the foregoing, it is recommended that defendants' Amended Motion for Summary Judgment be GRANTED in part and DENIED in part.

IT IS SO RECOMMENDED.

The parties are ordered to file any objections to this report and recommendation within ten (10) days. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir. 1994); *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

Aug. 26, 2004.